In the Matter of INTERCO INCORPORATED, et al., Debtors (Three Cases).

In re L.J. O'NEILL SHOE CO.

In re HY–TEST, INC.

HY–TEST, INC., Plaintiff,

v.

MISSOURI DEPARTMENT OF REVENUE, Defendant.

Joint Admin. No. 91–40442–172. Bankruptcy Nos. 91–40464–172, 91–40463–172. Claim Objection Nos. 55, 56. Adv. No. 92–4037–172.

United States Bankruptcy Court, E.D. Missouri, E.D.

July 17, 1992.

---

1. *Cf.* 11 U.S.C. § 552.

See also 141 B.R. 422.

Bryan, Cave, McPheeters & McRoberts, Gregory D. Willard, Lloyd A. Palans, John C. Boyle, Carl J. Spector, St. Louis, Mo., for debtors-in-possession.

Michael Stribling, Sr. Atty., Dept. of Revenue, State of Mo., Office of Gen. Counsel, Jackson, Miss., Jeffrey K. Fischer, Alana M. Barragan–Scott, Jefferson City, Mo., for Mississippi State Tax Com'n.

## ORDER

JAMES J. BARTA, Bankruptcy Judge.

This Order addresses the objections of Debtor Hy–Test, Inc. to a proof of claim of the Missouri Department of Revenue (Claim Objection No. 56), and the objections of Debtor L.J. O'Neill Shoe Company to a proof of claim of the Missouri Department of Revenue (Claim Objection No. 55).

This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 157 and 1334, 11 U.S.C. §§ 105 and 502, Bankruptcy Rule 3007 and Local District Court Rule 29. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

### I. *Background*

On January 24, 1991, Interco Incorporated ("Interco") and thirty affiliated entities, including Hy–Test, Inc. and L.J. O'Neill Shoe Company (collectively "Debtors") filed for relief under Chapter 11 of the United States Bankruptcy Code. The Debtors' Chapter 11 cases are being jointly administered for procedural purposes, pursuant to a January 25, 1991 Order of this Court.

The Debtors are continuing in possession of their property and are operating and managing their businesses as debtors-in-possession, pursuant to 11 U.S.C. §§ 1107 and 1108.

On April 18, 1991, this Court entered Standing Order # 3 which set July 1, 1991 as the Claims Bar Date. Standing Order # 3 directed as follows:

EXCEPT AS PROVIDED IN PARAGRAPHS 4–7 HEREOF, ANY CLAIM AGAINST ANY OF THE DEBTORS THAT IS NOT FILED IN ACCORDANCE WITH THE BAR ORDER ON OR BEFORE JULY 1, 1991 SHALL BE BARRED, AND THE DEBTORS AND THEIR ESTATES SHALL BE RELEASED FROM ANY AND ALL INDEBTEDNESS OR OTHER LIABILITY TO THE HOLDER OF EACH SUCH CLAIM AS CLAIM IS DEFINED IN 11 U.S.C. § 101(5), IN THESE CHAPTER 11 PROCEEDINGS. HOLDERS OF SUCH BARRED CLAIMS SHALL BE

FORECLOSED FROM VOTING UPON OR RECEIVING DISTRIBUTION UNDER ANY PLAN OR PLANS OF REORGANIZATION IN THESE CASES.

*Standing Order # 3*, p. 4. Paragraph 4 provided that certain creditors need not file proofs of claim by the claims bar date, including:

> Any creditor whose claim is allowable under section 507(a)(1) of the Bankruptcy Code as an expense of administration of the Debtors' chapter 11 cases ...

*Standing Order # 3*, p. 5.

For the period that is the subject of this proceeding, the Debtors' fiscal years began February 25, 1990 and ended February 23, 1991. Debtors' Missouri tax returns were due June 17, 1991; however, Debtors requested and obtained extensions to file the returns. Pursuant to the extensions, the L.J. O'Neill tax return was due on October 15, 1991 and the Hy–Test tax return was due on December 15, 1991.

On December 2, 1991, after the claims bar date, the Missouri Department of Revenue filed a proof of claim against L.J. O'Neill in the amount of $23,959.47. On January 13, 1992, the Missouri Department of Revenue filed a proof of claim against Hy–Test in the amount of $65,384.81. Both claims were designated as "unsecured priority claims under section 507(a) of the Bankruptcy Code" for corporate tax for the tax period "03/01/90—02/28/91." [1] The Hy–Test proof of claim requested payment of tax in the amount of $61,387.20 and interest to petition date of $3,997.41, for a total amount of $65,384.81. In addition both proof of claim forms were labeled "ADMINISTRATIVE" in the upper right hand corner.

Debtors filed objections to both claims on January 28, 1992. Included in the Hy–Test claim objection was a counterclaim against the Missouri Department of Revenue. On February 6, 1992, Debtor refiled the counterclaim in the form of an adversary proceeding which has been consolidated with the claim objection.

A preliminary hearing was held on March 12, 1992. At that time, this Court sustained the Debtor's objection to the claim of the Missouri Department of Revenue in the L.J. O'Neill case because the Department had failed to respond to the claim objection.

On April 8, 1992, this Court entered a pretrial scheduling order which provided for oral argument on April 30, 1992 "solely on the legal issue of whether a claim for income tax allocable to pre-petition income but payable post-petition should be considered a pre-petition or a post-petition claim ..." Both parties submitted memoranda. In addition, this Court received a response from the Mississippi State Tax Commission in support of Claimant's position.

At the hearing on April 30, 1992, this Court granted the Missouri Department of Revenue's motion to reconsider its claim against L.J. O'Neill and, in that the legal issue in both claim objections is the same, consolidated the objections to the Missouri Department of Revenue claims in the L.J. O'Neill and Hy–Test cases. Counsel for the Debtors and counsel for the Missouri Department of Revenue presented oral argument. With leave of Court, counsel for the Internal Revenue Service presented arguments in support of the position espoused by the Missouri Department of Revenue. Based on the record as a whole, the Court makes the following determinations.

## II. *Arguments of the Parties*

### A. Debtors' Arguments

Debtors contend that the claims of the Missouri Department of Revenue arose prepetition; that the Department did not file its proofs of claim in compliance with

---

1. The Missouri Department of Revenue asserts that "[f]or purposes of Missouri corporate income tax law, [Debtors'] taxable year ended February 28, 1991 ..." *Missouri Department of Revenue's Reply,* filed April 20, 1992, p. 3. This Court has not found Missouri law which supports a finding that the tax period is a period other than Debtors' fiscal years. For the purposes of this opinion, this Court has used the beginning and ending dates of Debtors' fiscal years as the beginning and ending dates of the Debtors' corporate tax year.

the claims bar date; and that, therefore, this Court must disallow the claims entirely.

Debtors argue that the claims of the Missouri Department of Revenue fall within the Bankruptcy Code's broad definition of "claim."[2] Further, Debtors note that most "courts have held that a ... claim ... arises for bankruptcy purposes at the time of the act giving rise to the claim." *In re Wisconsin Barge Lines*, 91 B.R. 65, 68 (Bankr.E.D.Mo.1988) (citations omitted). According to Debtors, the Department's claims arose prepetition rather than postpetition because, "even though the Claim was partly unliquidated, contingent and unmatured, Claimant had a 'right to payment' with respect to all of Debtor's [fiscal year ending] February 23, 1991 Missouri income tax obligation. Moreover, all of the conduct giving rise to the Claim occurred before the Petition Date." *Debtors' Opening Brief*, filed April 10, 1992, p. 5.

### B. Missouri Department of Revenue's Arguments

The Missouri Department of Revenue argues that its claims are postpetition administrative expenses. Therefore, it was not required to file a proof of claim in either of these cases. The Department contends that under Missouri tax law "the tax is not due and cannot be assessed or collected until the return is due." *Missouri Department of Revenue's Reply to Debtor's Opening Brief in Support of Objection to Claim*, filed April 20, 1992, p. 6 (citations omitted). According to the Department, "there is no liability until the income tax return is due." *Id.*

### C. Summary

To summarize these positions, Debtors argue that to determine whether the claims of the Missouri Department of Revenue are

prepetition or postpetition claims, this Court should look to when the income was actually earned, and that here the income was earned prepetition.[3] The Missouri Department of Revenue contends that to determine whether its claims are prepetition or postpetition, this Court should look at the date the return is due without any extensions, and that here the return was due postpetition.

### III. *Analysis*

The determination of whether the claims of the Missouri Department of Revenue are entitled to a first priority as an administrative expense or whether the claims should be accorded priority under Section 507(a)(7) requires an examination of two sections of the Bankruptcy Code. The analysis begins with Section 507(a)(1) which states:

> The following expenses and claims have priority in the following order:
>
> (1) First, administrative expenses allowed under section 503(b) of this title ...

11 U.S.C. § 507(a)(1).

Next the Court must examine Section 503(b) to determine whether the claims may be allowed as administrative expenses. Specifically, the Court must determine if the taxes are within the scope of Section 503(b)(1)(B)(i): "any tax ... incurred by the estate, except a tax of the kind specified in section 507(a)(7) of this title ..." Pursuant to this subsection of Section 503 a claim is entitled to allowance as an administrative expense if it can be shown that the tax was incurred by the estate, *and* that the tax is not one of those taxes specified in Section 507(a)(7). If either of those requirements is not met, the taxes are not entitled to be classified as an administrative expense pursuant to Section 507(a)(1).

Debtors assert that the claims of the Missouri Department of Revenue were not

---

**2.** The Bankruptcy Code defines "claim" as follows:

"[A] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured ..."

11 U.S.C. § 101(5)(A).

**3.** Debtors argue further that, at least in the Hy-Test case, "[n]one of the taxes are allocable to the post-petition period because Debtor incurred a loss from the Petition Date through February 23, 1991." *Debtor's Opening Brief in Support of Objection to Claim*, filed April 10, 1992, p. 5.

incurred by the estates because "corporate income tax obligations are incurred as and when the income is earned." *Debtor's Opening Brief,* at 9. (citing *Graham Paper Co. v. Gehner,* 332 Mo. 155, 59 S.W.2d 49, 51 & 52 (1933)). This Court finds, however, that when Congress drafted the Bankruptcy Code it defined the term "incurred" as it is to be applied in determining the priority level of taxes.

### A. Legislative History

During the process of formulating what was to become the fifth bankruptcy law of the United States, Congress addressed the question of the intricate interaction of the bankruptcy laws and the tax laws. The initial discussions were begun in the House of Representatives, followed by debates in the Senate and ultimately concluded with the introduction of a compromise bill. As noted in the Report of the House of Representatives, "Congress has taken great care to insure that tax policy will not frustrate the operation of bankruptcy." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 274 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6231. "The guiding principle is that the tax treatment of a bankruptcy estate should not deter the debtor from filing bankruptcy." *Id.* at 276, 1978 U.S.C.C.A.N. 6233.

In its version of the proposed bankruptcy bill, the House of Representatives set forth a number of special tax sections "designed to prevent tax laws from hindering the bankruptcy process." *Id.* at 275, 1978 U.S.C.C.A.N. 6232. The "threshold issue" the House considered was "whether the estate created under § 541 ... should be treated as a separate taxable entity." *Id.* The House Report which accompanied proposed title 11 stated: "With respect to a corporate debtor, section 346(c)(1) ... follows current law. The estate is not a separate taxable entity, and the corporation remains taxable as if the case had not been commenced." *Id.* at 276, 1978 U.S.C.C.A.N. 6233.

The Senate Judiciary Committee agreed that the estate of a "corporate debtor is not a separate entity for tax purposes. The income of the debtor is to be taxed as if the case were not commenced, except as provided in the remainder of section 346 and section 728." S.Rep. 95–989, 95th Cong., 2d Sess. 45 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5831.[4] After the Senate Judiciary Committee reported the Senate's version of the proposed bankruptcy law, the bill was referred to the Senate Finance Committee for its consideration of the tax-related provisions in the bill. *Collier on Bankruptcy,* Appendix Volume 3, p. VI–1 (15th ed. 1990). The Finance Committee recommended amendments to several sections of the bill, all of which were adopted by the Senate. *Id.* Among the amendments was a "general definition of when a tax is 'incurred' for purposes of the various tax collection rules affecting the debtor and the estate." S.Rep. 95–1106, 95th Cong., 2d Sess. 7–8 (1978). The Finance Committee amendment stated that "a tax on or measured by income or gross receipts for a taxable period shall be considered incurred on the last day of the taxable period ..." S. 2266 § 346(a)(1), 95th Cong.2d Sess., as reported by the Senate Judiciary Committee and the Senate Finance Committee (1978).

"After the Senate adopted its amendment, [S. 2266], in the nature of a substitute to H.R. 8200 and sent the bill back to the House, the floor managers in both Houses met and agreed upon a compromise bill." *Collier on Bankruptcy,* Appendix Volume 3, p. IX–1 (15th ed. 1990). The compromise bill did not contain the clear definition of when a tax was to be considered incurred as recommended by the Senate Finance Committee. However, the final statements of both the House and the Senate reflect that the compromise bill adopted "the substance of the definition in section 346(a) [of] the Senate amendment of when taxes are to be considered 'incurred'[.]" 124 Cong.Rec. H.32,416 (September 28, 1978) and 124 Cong.Rec. S.34,-016 (October 5, 1978), *see also* 1978

---

**4.** The report of the Senate Judiciary Committee accompanied Senate Bill 2266, which the Senate adopted in the nature of a substitute to H.R. 8200.

U.S.C.C.A.N. 5787, 6558. It is apparent from these statements that Congress intended that this definition of when a tax is incurred is to be applied "solely for purposes of determining which category of section 507 tests the priority of a particular tax liability." *Id.*[5] In both statements, Congress reiterated that "for purposes of the priority rules, a tax on income for a particular period is to be considered 'incurred' on the last day of the period." *Id.*[6]

### B. The Taxable Period

Under Missouri law, for purposes of computation of taxable income, "a taxpayer's taxable year shall be the same as his taxable year for federal income tax purposes." Mo.Rev.Stat. § 143.280 (1978). Under federal tax law, "[t]axable income shall be computed on the basis of the taxpayer's taxable year." 26 U.S.C. § 441(a). "[T]he term 'taxable year' means ... taxpayer's annual accounting period, if it is a calendar year or a fiscal year." 26 U.S.C. § 441(b)(1).[7]

Debtors' fiscal years, and therefore their taxable years began February 25, 1990 and ended February 23, 1991. While Missouri law includes provisions for taxpayers to make declarations of estimated tax during the taxable period, (and indeed makes such declarations mandatory for corporations doing business in the state, *see* Mo.Rev. Stat. §§ 143.521 and 143.531 (1978 & Cum. Supp.1990)), Missouri follows federal law in considering the period for computation of taxable income, i.e., the taxable period, to be the taxable year.

■ As explained above, the legislative history of the Bankruptcy Code suggests that for priority purposes, a tax is incurred on the last day of the taxable period. Debtors' taxable period ended on February 23, 1991; therefore, the taxes were incurred on February 23, 1991. Taxes incurred during the administration of the estate share the first priority accorded to administrative expenses generally. 11 U.S.C. §§ 503(b)(1)(B) and 507(a)(1). However, Congress anticipated that there would be situations where a tax might be technically "incurred" during the administrative period, but should be excluded from that first priority status because the genesis of the tax was prepetition income or gross revenue. Thus the Court must determine not only that the taxes were incurred by the estate, but also that the taxes do not fall within the seventh level priority set out at Section 507(a)(7).

### C. Classification as a Seventh Level Priority Claim

Under Section 507(a)(7), certain tax claims receive seventh level priority. These taxes include:

---

5. Apparently Congress was concerned that the broad wording of the Senate Finance Committee's definition might thwart other purposes of the Bankruptcy Code. "[F]or example, the House amendment contains a special rule for the treatment of taxes under the 45–day exception to the preference rules under section 547 and the definitions of when a tax is incurred for priority purposes are not to apply to such preference rules." 124 Cong.Rec.H. 32,416 and 124 Cong.Rec.S. 34,016.

6. Other courts have held that "[a] tax is incurred on the date it accrues, not on the date of assessment or the date it is payable." *In re Overly–Hautz Co.,* 57 B.R. 932, 937 (Bankr.N.D.Ohio 1986) (citing *United States v. Redmond,* 36 B.R. 932 (D.Kansas 1984); *In re Davidson Lumber Co.,* 47 B.R. 597 (Bankr.S.D.Fla.1985); and *In re Scrap Disposal, Inc.,* 24 B.R. 178 (Bankr.S.D.Calif.1982), *aff'd* 38 B.R. 765 (Bankr.9th Cir. BAP 1984)). In *Overly–Hautz,* the claim was for ex-

cise taxes for tax years which occurred entirely prepetition. 57 B.R. at 937. Similarly, the claim in *In re Scrap Disposal* was for personal property taxes for a tax year which occurred entirely prepetition. 24 B.R. at 179.

In *Davidson Lumber,* the Internal Revenue Service filed claims after the claims bar date. The bankruptcy court found the claim "relate[d] back to a pre-bankruptcy corporate income tax liability and was not incurred by the estate." 47 B.R. at 599. Because the case was a liquidating case under Chapter 7, and because the claim was for recapture of the debtor's investment tax credit, the circumstances are sufficiently different from those here, such that the opinion in *Davidson Lumber* is not binding precedent in the matters being considered here.

7. "[T]he term 'annual accounting period' means the annual period on the basis of which the taxpayer regularly computes his income in keeping his books." 26 U.S.C. § 441(c).

[A]llowed unsecured claims of governmental units; only to the extent that such claims are for—

(A) a tax on or measured by gross income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made with 240 days after such assessment was pending, before the date of the filing of the petition; or

(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case;

. . .

11 U.S.C. § 507(a)(7)(A).

The Missouri Department of Revenue's claims do not fall within subsection (i), because the Debtors' taxable years did not end on or before the date of the filing of the petition. Neither do the tax claims fall within subsection (ii), in that they were not assessed at any time within 240 days before the petition date. Debtors argue that the tax claims fall within subsection (iii) because the taxes were "not assessed before, but [were] assessable ..., after, the commencement of the case." *Debtors' Opening Brief* at 9 (quoting *In re O.P.M. Leasing Services, Inc.*, 68 B.R. 979, 983 (Bankr.S.D.N.Y.1987)).

■ The Court must begin its analysis of Section 507(a)(7)(A)(iii) by applying the words of the statute literally. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989). The words used by Congress in a statute or act are persuasive evidence of the purpose of such an act, but when the meaning of such words would lead to absurd results, the courts will look behind the words to the purpose behind the act or statute. *United States v. American Trucking Assoc.*, 310 U.S. 534, 543–544, 60 S.Ct. 1059, 1063–1064, 84 L.Ed. 1345 (1940).

If Section 507(a)(7)(A)(iii) is applied literally, the tax claims of the Missouri Department of Revenue fall within its parameters: the taxes are not "of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C)" [8], and the taxes were "not assessed before" but were "assessable ... after, the commencement of the case[.]" 11 U.S.C. § 507(a)(7)(A)(iii); *see also O.P.M. Leasing*, 68 B.R. at 983.

The Missouri Department of Revenue contends that, under this section, a corporate debtor could argue that a tax year which began *and* ended after the petition date should be categorized as a seventh level priority rather than as an administrative expense because that tax "was not assessed before but was assessable ... after the commencement of the case." *Id.* A court should not presume that Congress intended an absurd result. *See United States v. American Trucking Assoc.*, 310 U.S. at 541–544, 60 S.Ct. at 1063–1064. Congress did not intend that taxes for periods which occur entirely postpetition should be relegated to seventh level priority status. Such taxes are afforded an administrative expense priority under Section 503(b)(1)(B).

An absurd result *would* be produced if first level priority status were to be assigned to taxes which are attributable to prepetition income. If taxes were allowed as an administrative priority merely because they were technically "incurred" during the administrative period, a corporate

---

**8.** Under Section 523(a)(1) certain taxes are excepted from discharge, including taxes:

(B) with respect to which a return, if required—

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax;

11 U.S.C. § 523(a)(1)(B) & (C).

debtor that filed a petition for reorganization on the day before the end of its fiscal year would be faced with the burden of including the taxes as a first priority. This result would obtain, even though the taxes would be attributable to income that was almost entirely prepetition. This is inconsistent with the treatment of other claims attributable to prepetition activities of debtors. Therefore, the Court finds that Congress recognized this potential for inconsistency and directed that certain claims which were technically incurred postpetition should nevertheless be excluded (at least in part) from first level priority status to reflect their prepetition connections.

## IV. *Conclusion*

The underlying purpose of the reorganization provisions of the Bankruptcy Code "is to restructure a business's finances so that it may continue to operate, provide its employees with jobs, pay its creditors, and produce a return for its stockholders." H.Rep. No. 95–595, 95th Cong., 1st Sess. p. 220 (1978), *reprinted in* 1978 U.S.C.C.A.N, 5787, 6179. "If the business can extend or reduce its debts, it often can be returned to a viable state." *Id.* In particular, Congress provided that claims of a kind specified in section 507(a)(7) would receive "deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim." 11 U.S.C. § 1129(a)(9)(C). This policy is advanced by a narrow construction of the administrative priority section of the Bankruptcy Code. *See O.P.M. Leasing*, 68 B.R. at 985 (citing *In re Lorber Industries of California, Inc.*, 675 F.2d 1062, 1067–68 (9th Cir.1982)).

The purpose espoused by Congress will best be achieved by dividing the priority (as distinguished from the claim) accorded to the tax claims of the Missouri Department of Revenue, such that the taxes attributable to income earned prepetition receive the seventh level priority status described in Section 507(a)(7), and the taxes attributable to income earned after the petition date receive first priority administrative expense status under Section 503(b)(1)(B).

The Missouri Department of Revenue has argued that the Court cannot "split" the taxes for a fiscal year which straddles the petition date, because that would result in a split in the tax year; and that such a result in a corporate reorganization case is not provided for in the Bankruptcy Code. *See* 11 U.S.C. § 346(c)(1) and 1146(a). The Court has determined however, that a "split" in the priority treatment of a tax claim does not require or necessarily result in a split in the tax year or a change in the status of a debtor. The determinations made by the Court in this order can be accomplished without violating any provision of the Bankruptcy Code, without creating any inconsistency with the Congressional intent as expressed in the legislative history, and without disturbing the rehabilitative purpose of the Bankruptcy Code.

■ In conclusion, for the purpose of determining the priority of the claims of the Missouri Department of Revenue in these cases, the taxes were incurred during the administration of the estate. However, the portion of those taxes allocable to prepetition income falls within the scope of Section 507(a)(7)(A)(iii) and must be accorded seventh level priority status. The portion of the taxes attributable to postpetition income is entitled to administrative expense priority under Section 503(b)(1)(B). Therefore, consistent with Standing Order # 3, a proof of claim for prepetition taxes was to have been filed prior to the claims bar deadline.

IT IS ORDERED that the Debtors' objections to the proofs of claims filed on behalf of the Missouri Department of Revenue, Nos. 05841 and 05886 are sustained in part and overruled in part, in that the taxes attributable to prepetition income are not allowed for failure to file a timely proof of claim; and that the taxes attributable to postpetition income are allowed in the amounts to be determined as administrative expenses pursuant to 11 U.S.C. § 507(a)(1).

The Debtors' adversary complaint prays for alternative relief including a request for the application of $12,000.00 to postpeti-

tion taxes. In view of the determinations in this Order, and in view of the possibility that the Missouri Department of Revenue may elect to pursue its argument for the allowance of the claims based on excusable neglect.