In re L.J. O'NEILL SHOE COMPANY; Hy–Test, Inc., Debtors.

MISSOURI DEPARTMENT OF REVENUE, Claimant–Appellant,

v.

L.J. O'NEILL SHOE COMPANY; Hy–Test, Inc., Debtors–Appellees.

No. 94–3751.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1995.

Decided Aug. 30, 1995.

Alana Maria Barragan–Scott, Assistant Attorney General, argued, Jefferson City, MO (John R. Munich, on brief), for appellant.

Gregory D. Willard, argued, St. Louis, MO, for appellee.

Before MAGILL and HANSEN, Circuit Judges, and GOLDBERG,* Judge.

HANSEN, Circuit Judge.

The Missouri Department of Revenue (MDOR) appeals the district court's [1] decision affirming the bankruptcy court's [2] decision which sustained the debtors' objections to MDOR's claim for corporate income taxes for the year in which each of the debtors filed chapter 11 bankruptcy. The bankruptcy court and the district court both found that the portions of MDOR's tax claims that related to the debtors' prepetition corporate income were not entitled to a first distribution priority as administrative expenses under 11 U.S.C. §§ 507(a)(1) & 503(b). MDOR argues that its entire tax claims are entitled to administrative expense priority. We affirm.

## I.

The facts are not in dispute. On January 24, 1991, INTERCO Inc., and thirty of its affiliates, including L.J. O'Neill Shoe Company and Hy–Test, Inc., filed for chapter 11 bankruptcy protection. On January 25, 1991, the bankruptcy court consolidated all of the cases for administrative purposes. The debtors continue to operate and manage their businesses as debtors-in-possession pursuant to 11 U.S.C. § 1107 & 1108. These chapter 11 bankruptcy cases were the largest ever filed in the Eastern District of Missouri and are believed to be the fifth largest ever filed in the United States.

On April 18, 1991, the bankruptcy court entered a standing order (standing order # 3) setting July 1, 1991, as the bar date for filing claims. Paragraph 4 of the standing order provided that certain types of creditors did not need to file proofs of claim by the bar date including, "[a]ny creditor whose claim is allowable under section 507(a)(1) of the Bankruptcy Code as an expense of administration of the Debtors' chapter 11 cases." In short, all creditors, except creditors holding administrative expense claims, were required to file claims by the July 1, 1991, claims bar date.

MDOR's claim is for Missouri corporate income taxes. Under Missouri law, the taxable year for corporate income taxes is the corporation's fiscal year. Here, the debtors' relevant fiscal years began on February 25, 1990, and ended February 23, 1991. Thus, the debtors' taxable years ended about a month after the debtors filed for bankruptcy. The debtors' Missouri tax returns were due June 17, 1991. The debtors received extensions on the returns. Under the extensions, the L.J. O'Neill return was due on October 15, 1991, and the Hy–Test return was due on December 15, 1991.

On December 2, 1991, five months after the expiration of the claims bar date, MDOR filed a proof of claim against L.J. O'Neill for $23,959.47. On January 13, 1992, more than six months after the claims bar date, MDOR filed a proof of claim against Hy–Test for $65,384.81. Both claims were labeled as "administrative" in the upper right hand corner

---

* The HONORABLE RICHARD W. GOLDBERG, Judge, United States Court of International Trade, sitting by designation.

1. The Honorable Edward L. Fillipine, then Chief Judge, now Senior United States District Judge for the Eastern District of Missouri.

2. The Honorable James J. Barta, United States Bankruptcy Judge for the Eastern District of Missouri.

of the proof of claim form and additionally stated that both claims were "unsecured priority claims under section 507(a)" for corporate taxes for the period 3/1/90–2/28/91.

The debtors objected to both claims. The debtors also filed a counterclaim in the form of an adversary proceeding (a lawsuit within the bankruptcy cases) against MDOR seeking the return of some of the year's taxes the debtors had already paid to MDOR. The bankruptcy court initially sustained the debtors' objection to MDOR's claim for taxes against L.J. O'Neill on the basis that MDOR failed to respond to the objection. The bankruptcy court, however, later reconsidered that ruling and decided to consolidate the two sets of claims and objections and decide them both on the merits.

The bankruptcy court heard oral arguments and eventually sustained the objections in part, and overruled the objections in part. *Hy–Test, Inc. v. Missouri Dep't of Revenue (In re L.J. O'Neill Shoe Co., In re Hy–Test, Inc.)*, 143 B.R. 707 (Bankr.E.D.Mo. 1992). The bankruptcy court concluded that only a small percentage of MDOR's tax claims against both L.J. O'Neill and Hy–Test, which related to postpetition income, qualified as timely filed administrative expense claims. The bankruptcy court struck the remaining portions of MDOR's tax claim, which was attributable to prepetition income, as time barred under the standing order. The district court affirmed. MDOR appeals.

## II.

The only issue presented for our review deals with the complicated interface between the tax laws and the bankruptcy laws. The particular question presented here is whether the portions of MDOR's corporate income tax claims that relate solely to the income of the debtors earned before the date they filed for bankruptcy ("prepetition income") qualify as administrative expense claims under 11 U.S.C. § 503(b)(1)(B)(i). There is no dispute here that the portions of the claims relating to income the debtors earned after they filed for bankruptcy ("postpetition income") are

entitled to administrative expense treatment. More than eleven months of each debtor's tax year, however, fell within the prepetition period. If those prepetition portions of MDOR's tax claims are entitled to administrative expense treatment, then both claims in their entirety would be deemed timely filed under the bankruptcy court's standing order and would be entitled to a first priority distribution under 11 U.S.C. § 507(a)(1). If we affirm the bankruptcy and district courts, however, the prepetition portion of each claim is time barred.

■ This is a question of first impression in the circuit courts. We review the bankruptcy and district courts' legal conclusions de novo. *Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir.1987). Section 503 of the Bankruptcy Code sets out which claims may be allowed as administrative expenses. Administrative expenses, as defined in section 503, are a category of claims given first priority under 11 U.S.C. § 507(a)(1) in the distribution of the bankruptcy estate. *See Zagata Fabricators v. Superior Air Prod.*, 893 F.2d 624, 627 (3d Cir.1990). "By placing creditors who are entitled to payment of these administrative expenses first in line, sections 503 and 507 advance the estate's interest in survival above all other financial goals." *Id.* It is well settled, however, that because administrative expense priority (and other priorities in distribution) are contrary to the Bankruptcy Code's general policy of equal distribution, these priorities should be narrowly construed. *Stuart v. Carter (In re Larsen)*, 59 F.3d 783, 786 (8th Cir.1995) (citing *In re Northwest Fin. Express, Inc.*, 950 F.2d 561, 563 (8th Cir.1991)).

■ The relevant portion of section 503 states:

(b) After notice and a hearing, there shall be allowed, administrative expenses, ... including:

. . . .

(1)(B) any tax—

(i) incurred by the estate, except a tax of a kind specified in section 507(a)(7) [3] of this title.

---

**3.** Now 507(a)(8)—after the 1994 amendments— but that does not concern us in the analysis of this case.

11 U.S.C. § 503(b)(1)(B)(i). Under the terms of this section, the tax claim must satisfy a "two-prong test" to qualify as an administrative expense claim. *City of New York, Dept. of Finance v. R.H. Macy & Co. (In re R.H. Macy & Co.)*, 176 B.R. 315, 316–17 (S.D.N.Y. 1994) (citing *In re O.P.M. Leasing Serv., Inc.*, 68 B.R. 979, 982 (Bankr.S.D.N.Y.1987)). First, the tax must be "incurred by the estate." *Id.* Second, the tax must not be "specified in section 507(a)(7)." *Id.* Section 507(a)(7) provides a seventh priority in distribution to certain types of tax claims. If either of these two requirements is not satisfied, then the claim is not entitled to administrative expense treatment.

■ The bankruptcy court and the district court both held that while the entire corporate tax was "incurred by the estate" (i.e.— incurred postpetition), the portion of the tax attributable to prepetition income was "of a kind specified in section 507(a)(7)." Thus, both courts concluded that the prepetition portions of MDOR's tax claims were not entitled to be first priority administrative expenses but instead were entitled to a seventh priority under § 507(a)(7). Under the standing order, however, the portion of MDOR's claims falling under § 507(a)(7) are time barred.

MDOR contends that the district court and the bankruptcy court erred by concluding that the prepetition portions of the tax claims were not entitled to administrative expense treatment. MDOR argues that its entire tax claim against each debtor qualified for administrative expense treatment under § 503 because the tax was both "incurred by the estate" and it is not the kind of tax specified in § 507(a)(7). The debtors argue that the lower courts properly concluded that only the portion of each claim that is derived from postpetition income should receive administrative expense treatment. The debtors also contend, however, that we could reach the same result under the first prong of the test,

i.e., that the prepetition portion of the tax was not "incurred by the estate.".[4]

We need not accept the debtors' invitation to reach the difficult question of whether the portion of the tax attributable to prepetition income was "incurred by the estate," because like the courts below, we conclude that the prepetition portion of the claim was for a tax of a kind specified in section 507(a)(7). We thus will assume, for the purposes of this analysis only, that the tax was "incurred by the estate" and proceed to determine whether the tax is "of a kind specified in section 507(a)(7)." If the tax is of a kind specified in section 507(a)(7), then it does not receive administrative expense treatment.

Section 507(a)(7)[5] provides:

(a) The following expenses and claims have priority in the following order:

. . . .

(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or

(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) or this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case.

---

**4.** The debtors did not take a cross-appeal on this issues, but are not required to do so when they argue (like they do here) to sustain a lower court's decision on grounds not relied on by the court below. *Wycoff v. Menke*, 773 F.2d 983, 985 (8th Cir.1985).

**5.** The 1994 Bankruptcy Amendments have changed the numbering of this section to 507(a)(8). To avoid confusion, however, we will continue to refer to the section as 507(a)(7) because that was the numbering in effect at the time this case was decided below.

The parties agree that the only arguably applicable subsection in this case is subsection (iii). Likewise, it is undisputed that the references in subsection (iii) to section 523(a)(1), will have no bearing on this case. Thus, the only question presented is whether the corporate income taxes the debtors owed for their 1990–91 tax year were "not assessed before" but were "assessable ... after, the commencement of the case."

The bankruptcy court found, and the district court agreed, that under the plain meaning of subsection (iii), the prepetition portions of the corporate taxes were not assessed before the debtors filed for bankruptcy but were assessable after the filing of the case. Thus, both courts concluded that the tax was "of a kind specified in section 507(a)(7)," and therefore the portion of the taxes that dealt with prepetition income was not entitled to an administrative expense priority. The reasoning and conclusion of the bankruptcy court and the district court are consistent with those of the only other courts to address this specific issue. *See, e.g., In re Hillsborough Holdings Corp.,* 156 B.R. 318, 320 (Bankr.M.D.Fla.1993); *In re O.P.M. Leasing Serv., Inc.,* 68 B.R. 979, 982–985 (Bankr.S.D.N.Y.1987); *see also Towers v. United States (In re Pacific–Atlantic Trading Co.),* 160 B.R. 136, 138 (N.D.Cal.1993), *rev'd on other grounds,* 33 F.3d 1064 (9th Cir.1994). The facts of *Hillsborough* and *O.P.M.* are nearly identical to the case before us.

MDOR argues that the lower courts' "plain meaning" reading of subsection (iii) is clearly contrary to the intended meaning of the statute. MDOR argues that under the "plain meaning" reading, no income taxes would ever be entitled to administrative expense treatment under 503(b), even if the tax claim arose entirely after the date of the bankruptcy petition, i.e., the tax year began after the date of bankruptcy. Such taxes, which would accrue and would be assessed postpetition, would nonetheless under the "plain meaning" reading fall under section 507(a)(7)(A)(iii), because those taxes were "not assessed before" bankruptcy and were "assessable ... after the commencement of the case." MDOR contends that this "plain meaning" reading would read section 503(b) out of the Code

because it would sweep any tax "incurred by the estate" under section 507(a)(7), for the reason that those taxes will always be assessable postpetition.

Moreover, under the bankruptcy court and the district court's interpretation, there would be no reason to divide the claim into a portion that is attributable to prepetition earnings and a portion that is attributable to postpetition earnings. The whole tax claim would be treated as a seventh priority claim because the whole tax claim would not be assessed at the time of the filing of the bankruptcy petition, and the whole claim would become assessable after that filing. Thus, under that reading the whole tax claim would be a seventh priority claim, and the lower courts did not follow their own rationale when they divided the claims into two parts—giving one part prepetition-seventh-priority treatment and one part postpetition-administrative-expense-priority treatment.

The bankruptcy court did not find these problems with its "plain meaning" prohibitive because it found that any interpretation that would make taxes on postpetition earnings a seventh priority expense would be "absurd." 143 B.R. at 713. The bankruptcy court then cited to canons of construction and interpretation which say that courts should avoid interpretations which result in absurd meanings. *Id.* We nevertheless agree with MDOR that the "plain meaning" reading provided by the lower courts presents some conceptual difficulties and structural inconsistencies in this case. In particular, we are concerned by the fact that the lower courts' reading of the statutory language of subsection (iii) would render section 503(b)(1)(B) superfluous in this case. As the Supreme Court has stated while construing the Bankruptcy Code, "[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 243, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). In our view, this is one of those rare cases

where the "plain meaning" interpretation produces a result that would be at odds with what the Congress intended in subsection (iii).

■ We find, however, that subsection (iii) lends itself to another "permissible meaning" that "produces a substantive effect that is consistent with the rest of the law." *United Savings Ass'n v. Timbers of Inwood Forest,* 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988). We believe that subsection (iii) can be read, like the other subsections of 507(a)(7)(A), to address only *prepetition taxable activity or events.* See 11 U.S.C. §§ 507(a)(7)(A)(i) (prepetition tax year ending on or before date of filing) & 507(a)(7)(ii) (tax assessed within the 240 days prior to filing); *see also Small Business Admin. v. Preferred Door Co., Inc. (In re Preferred Door Co.),* 990 F.2d 547, 549 (10th Cir.1993) (noting that section 507(a)(7) deals with *prepetition* taxes). Thus, we interpret section 507(a)(7)(A)(iii) to address taxes derived from prepetition events "not assessed before, but assessable ... after, the commencement of the case." Such an interpretation, we believe, is consistent with the related subsections of 507(a)(7)(A) and avoids results which would be at odds with other Bankruptcy Code sections relevant to this question of distribution priorities.[6]

■ Given that interpretation of subsection (iii), we nonetheless reach the same result the bankruptcy court and district court reached in this case. The portion of each of MDOR's income tax claims that relates to prepetition income of the debtors is a claim for "a tax of a kind specified in section 507(a)." Accordingly, under the terms of section 503(b)(1)(B)(i), that portion of each of MDOR's claims is not entitled to an administrative expense priority. However, the portion of the tax claim that is derived from postpetition income of the debtors is not a prepetition tax claim under subsection (iii) and thus is entitled to administrative expense treatment.

■ MDOR argues that allowing part of its income tax claim to be treated as a prepetition tax claim and part of its claim to be treated as a postpetition tax claim is inconsistent with provisions of tax and bankruptcy law governing the treatment of corporate income taxes in bankruptcy proceedings. The Internal Revenue Code provides that in cases of corporations in bankruptcy, "no separate taxable entity shall result from the commencement of a case under Title 11 of the United States Code." 26 U.S.C. § 1399. The Bankruptcy Code provides:

> The commencement of a case under this title concerning a corporation ... does not effect a change in the status of such corporation ... for the purposes of any state or local law imposing a tax on or measured by income. Except as provided in section 728 of this title, any income of the estate ... in such case may be taxed only as though such case had not been commenced.

11 U.S.C. § 346(c)(1). MDOR argues that under section 346(c)(1) and 26 U.S.C. § 1399, the corporate tax year cannot be split into a prepetition and a postpetition tax year, and income to the estate of a corporate debtor should be taxed as if the corporation had not filed bankruptcy.[7] MDOR contends that di-

---

**6.** MDOR proposes an alternative reading to the effect that subsection (iii) applies to income tax claims where the tax was fully assessable at the date of petition, but had not yet been assessed, and remained assessable under applicable law after the petition was filed. MDOR contends that the cases applying subsection (iii) support this interpretation because those cases deal mostly with back taxes where assessments had been prevented or delayed by an ongoing audit or by tax court litigation or things of a related nature, but the tax liability remained assessable under applicable law. We believe that MDOR's alternative reading is not true to the language of subsection (iii). The statute's phrase "after the commencement of the case," qualifies the word "assessable" in a temporal sense. MDOR's in-

terpretation overlooks this temporal qualification and treats "assessable" as applicable to the time periods both before and after the filing of the bankruptcy petition. To do so, MDOR must read the word "remains" into the last clause of the statute. While MDOR's reading is not implausible, we believe our reading is more consistent with the statute as it is written.

**7.** We have found only five cases that reference this section—and all of them discuss it in passing fashion. This section dictates that the bankruptcy estate of the corporate debtor is not a separate taxable entity. *In re Prudential Lines, Inc.,* 928 F.2d 565, 573 (2d Cir.1991). This presents problems of transferring loss carryovers to the estate

viding the tax claim into a prepetition portion and a postpetition portion essentially splits the debtors' corporate income tax year between the prepetition debtor and the postpetition estate. Thus, MDOR concludes that we are treating the debtor and the estate as separate taxable entities in violation of section 346(c)(1). *Cf.* L. King, 3 *Collier on Bankruptcy*, ¶ 503.04 at 503–39 to 503–40 n. 56 (1995) (because the taxable year of a corporation remains unchanged under 346(c)(1), prepetition income tax might be administrative expense if the taxable year closes postpetition and the court determines that the taxes were incurred at the close of the taxable year).

We believe MDOR's analysis is based on a misconception of the function of an administrative expense determination. We are not allowing the debtor to be "taxed" as two separate entities. The state of Missouri still taxes each of the debtors, consistent with the above provisions, as it would outside of bankruptcy—as one continuous corporate entity. The amount of that tax constitutes MDOR's claim against the estate. Only then, consistent with bankruptcy law, do we determine the priority with which MDOR's tax claim against that single corporate entity can be paid during the bankruptcy. As is quite common in bankruptcy claims adjudication, one portion of the claim is being treated as an administrative expense for distribution purposes, and the other portion is being treated as a priority claim entitled to a seventh priority for distribution purposes. Simply stated, the tax is being imposed against the single corporate entity in keeping with section 346(c)(1), but the payment of the tax imposed is being divided into separate components in accordance with the bankruptcy laws determining the priority of payment of those claims. Thus, there is nothing in either the bankruptcy or tax laws which prevents us from allowing different treatment during distribution for different portions of MDOR's claims in this case.

Our conclusion in this case is also consistent with the well-established rules of dealing with administrative expense priorities that we noted earlier. We have construed the administrative expense priority narrowly, *see In re Larsen*, 59 F.3d at 786, and we have allowed as administrative expenses only the portions of the claims that reasonably can be viewed to relate to or further the bankruptcy proceedings. *See Zagata Fabricators*, 893 F.2d at 627 (administrative expense status extended when the claim relates to creditors' conduct or indulgence that "advance the estate's interest in survival").

## III.

For the foregoing reasons, we affirm the judgment of the district court.

---

and then back to the corporate debtor after bankruptcy. *Id.* These observations, however, add

nothing to the plain language of the statute at issue here.