In re PACIFIC–ATLANTIC TRADING COMPANY, a California corporation, Debtor.

Edward F. TOWERS, Trustee, for Pacific Atlantic Trading Company, a California corporation, Plaintiff–Appellee,

v.

UNITED STATES of America and Internal Revenue Service, Defendants–Appellants.

No. 93–16668.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 15, 1995.

Decided Aug. 23, 1995.

See also, 33 F.3d 1064.

Gary D. Gray, Tax Div., U.S. Dept. of Justice, Washington, DC, for defendants-appellants.

Dennis D. Davis, Goldberg, Stinnett, Meyers & Davis, San Francisco, CA, for plaintiff-appellee.

Before: HUG, ALARCON, and TROTT, Circuit Judges.

ALARCON, Circuit Judge:

The United States of America ("Government") appeals from the district court's order affirming the judgment of the bankruptcy court. The district court ruled that the Government's claim for 1988 income taxes, filed as an administrative claim in Pacific Atlantic Trading Company's ("PATCO") Chapter 7 bankruptcy, was not an allowable administrative expense because: (1) the taxes were taxes of a kind specified in 11 U.S.C. § 507(a)(7)(A)(iii) (1988)[1] and thus specifically excepted from allowance as an administrative expense pursuant to 11 U.S.C. § 503(b)(1)(B)(i); and (2) alternatively, the taxes were not incurred by the estate. The district court also held that the 1988 tax liability should be distributed with late-filed,

non-priority claims pursuant to 11 U.S.C. § 726(a)(3) rather than with priority claims under 11 U.S.C. § 726(a)(1) because the Government failed to file a timely proof of claim.

The Government contends that its claim for PATCO's 1988 income taxes is entitled to first priority as an administrative expense rather than seventh priority as an unsecured tax claim because the taxes were incurred by the estate and were not taxes of a kind specified in § 507(a)(7). The Government also asserts that the district court erred in refusing the 1988 tax liability first distribution with other priority claims pursuant to § 726(a)(1), despite the Government's failure to file a timely proof of claim. We affirm the portion of the district court's judgment concluding that the Government's claim for PATCO's pre-petition 1988 income taxes does not qualify as an administrative expense. We reverse the district court's ruling that PATCO's tax liability for 1988 be distributed with late-filed, non-priority claims.

## BACKGROUND

The facts and procedural history in this case are not in dispute. PATCO was in the business of importing and exporting foodstuffs and other goods between the United States and the Far East. From 1985 to 1988, PATCO's president and chief executive officer, Peter Chui Lin Wong, and his wife, Dorothy Chao, fraudulently obtained lines of credit by submitting false bills of lading to various banks for collection of "phantom" shipments of goods to customers in Hong Kong, and by submitting other bills of lading to more than one bank for collection. During 1988, PATCO defaulted on these numerous lines of credit. The funds were not repaid, and Wong and Chao pled guilty to charges of bank fraud in 1990.

A. *Initiation of the Bankruptcy*

On September 15, 1988, PATCO's creditors filed an involuntary petition against PATCO pursuant to the provisions of Chapter 7 of the Bankruptcy Code. On October 31, 1988,

1. Unless otherwise indicated, all references to the United States Code are to the Bankruptcy Code, Title 11, 1988 edition.

an order for relief was granted and Edward F. Towers was appointed as interim Trustee ("Trustee"). The order for relief and appointment of trustee was entered on November 2, 1988 in the bankruptcy court docket. Shortly thereafter, on December 31, 1988, PATCO's 1988 taxable year for federal income tax purposes ended. The trustee failed to file PATCO's federal income tax return by the due date of March 15, 1989.

On or about June 21, 1989, the bankruptcy court clerk served an order on all creditors of the debtor, including the Internal Revenue Service ("IRS"), setting the last day to file a proof of claim with the bankruptcy court (the "bar date") for October 12, 1989. The IRS branch concerned with bankruptcy filings opened a file regarding the case. As of the bar date, IRS records showed that the debtor had no outstanding assessments or unassessed tax liabilities. The records showed, however, that PATCO had not filed income tax returns for the years 1985, 1986, 1987, and 1988, and that PATCO had made no installment payments of estimated taxes for these years. The records also reflected that PATCO had filed requests to extend the time in which to file its returns for 1985 and 1987. In the extension requests, PATCO reported that it had no federal tax liability.

■ On February 8, 1991, over one year after the bar date, the Government filed a nonadministrative priority claim in PATCO's bankruptcy case under § 507(a)(7) of the Bankruptcy Code in the amount of $58,622,-109.10. This claim sought pre-petition [2] corporate income taxes allegedly owed by PATCO for the taxable years of 1985, 1986, 1987, and 1988. The Trustee filed an objection to that claim.

2. In the case of an involuntary bankruptcy petition, the operative date for determining whether a claim arises pre-petition or post-petition is the earlier of the date of the entry of the appointment of a trustee or the date of the entry of the order for relief. 11 U.S.C. § 502(f). In this case, the order for relief and appointment of trustee was entered on November 2, 1988.

3. 11 U.S.C. § 505 provides, in pertinent part, that:
A trustee may request a determination of any unpaid liability of the estate for any tax in-

On May 1, 1991, the Trustee filed PATCO's 1988 federal corporate income tax return and requested a prompt determination of the debtor's liability for the 1988 tax year under 11 U.S.C. § 505.[3] The application accompanying the return showed that the return did not include "financial transactions" which may have occurred prior to the appointment of the Trustee on November 2, 1988. The IRS determined that there was an unreported federal income tax liability of $5,186,260.00, plus interest and penalties, for the taxable year ending December 31, 1988.

On September 3, 1991, the Trustee filed a motion for summary judgment seeking disallowance of the Government's claim for the taxable years 1985, 1986, 1987, and 1988 for failure to file a timely proof of claim. On October 21, 1991, while the Trustee's motion for summary judgment was pending, the Government filed an administrative expense claim reclassifying its claim for the PATCO's *1988* taxes as an administrative expense pursuant to 11 U.S.C. § 503(b)(1)(B)(i).[4] The 1988 tax claim is the subject of the instant appeal.

B. *The Related Litigation: Taxable Years 1985, 1986, and 1987*

On January 31, 1992, the bankruptcy court disallowed the portion of the claim that was based upon the taxable years 1985, 1986, and 1987 for failure to file a timely proof of claim. The order clarified its scope as follows: "The administrative claim, including that portion of the Internal Revenue Service's administrative claim for the year 1988 which was formerly part of its general unsecured claim, is not affected by this Order." On appeal, the district court affirmed in part and remanded in part. The district court held that because the Government's claim was untimely the

curred during the administration of the case by submitting a tax return for such tax and a request for such a determination to the governmental unit charged with responsibility for collection or determination of such tax.
11 U.S.C. § 505(b).

4. The Government's previous proof of claim classifying the 1988 tax liability as a pre-petition claim was subsequently withdrawn, subject to reinstatement.

bankruptcy court correctly denied first-tier distribution under 11 U.S.C. § 726(a)(1).[5] Section 726(a)(1) provides for the order of payment of priority claims. The district court rejected the bankruptcy court's complete disallowance of the late-filed claim, however, holding instead that the claims for 1985, 1986, and 1987 taxes were entitled to third-tier distribution pursuant to 11 U.S.C. § 726(a)(3).

The Government filed an appeal from the district court's January 31, 1992 order. We reversed the judgment on August 18, 1994, in a published opinion. In *United States v. Towers (In re Pac. Atl. Trading Co.)*, 33 F.3d 1064 (9th Cir.1994) (*"Towers I"*), we held that the timeliness of the filing of a priority claim does not affect its entitlement to first-tier distribution. *Id.* at 1067. Accordingly, the claims for taxable years 1985, 1986, and 1987 were allowed first-tier distribution pursuant to § 726(a)(1). *Id.*

### C. The Instant Appeal: Taxable Year 1988

On October 22, 1991, the Government reclassified its claim for PATCO's 1988 taxes as an administrative expense in the amount of $5,186,260.00, plus interest and penalties in the amount of $3,220,711.27, for a total claim of $8,406,971.27. On January 7, 1992, the Trustee filed a complaint for declaratory relief seeking a determination that the Government was not entitled to the administrative expense claim.

The Trustee and the Government filed cross-motions for summary judgment in the adversary proceeding. The Trustee argued that because the debtor had not engaged in business activity after the entry of the order for relief appointing him as Trustee, all of the debtor's 1988 income was pre-petition income, and did not qualify as an administrative expense.[6] The Government argued that the income tax liabilities for 1988 were incurred after the Trustee was appointed and thus properly classified as administrative expenses.

At a hearing on April 16, 1992, the bankruptcy court indicated that it agreed with the Trustee's legal position but found that a factual issue remained as to whether any income was earned subsequent to the Trustee's appointment on November 2, 1988. The bankruptcy court offered the Government a period of 120 days to submit affidavits to controvert the Trustee's assertion that all of PATCO's 1988 income was earned prior to the appointment of the Trustee on November 2, 1988. The Government failed to submit affidavits controverting the Trustee's assertion.

On October 20, 1992, the bankruptcy court entered an order granting the Trustee's motion for summary judgment in full. The Bankruptcy Court held that only post-petition expenses qualify as administrative expense claims. It found that, because the income at issue in the 1988 claim was earned prior to the appointment of the Trustee, it was not incurred by the estate, and did not qualify as an administrative claim under 11 U.S.C. § 503.[7] The bankruptcy court ruled

---

**5.** 11 U.S.C. § 726 provides, in pertinent part, that:

> (a) Except as provided in section 510 of this title, property of the estate shall be distributed—
>
> > (1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title;
> >
> > . . . . .
> >
> > (3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection[.]
>
> 11 U.S.C. § 726(a).

**6.** During December 1988, PATCO's bankruptcy estate received income in the amount of $6,656.25. Both parties agree that this income

was reported by the Trustee in PATCO's 1988 income tax return and, after taking deductions into account, no tax was due on this income. Accordingly, the only income at issue in this appeal is income earned prior to the entry of the order for relief and the appointment of trustee on November 2, 1988.

**7.** 11 U.S.C. § 503 provides, in pertinent part, that:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> > . . . . .
> >
> > (1)(B) any tax—
> > (i) incurred by the estate, except a tax of a kind specified in section 507(a)(7) of this title[.]

that the 1988 claim was a seventh priority claim under 11 U.S.C. § 507.[8]

The district court affirmed. *See Towers v. United States (In re Pac.–Atl. Trading Co.),* 160 B.R. 136 (Bankr.N.D.Cal.1993).[9] The district court held that the claim for the 1988 taxable year was not assessed before the commencement of the case and was assessable only after the filing of the petition. *Id.* at 138. Accordingly, the 1988 tax claim fell within the "narrow parameters" defined by § 507(a)(7)(A)(iii) and thus "fit[ ] squarely within the specific exception carved out by Congress in Bankruptcy Code Section 503." *Id.* The district court rejected the Government's argument that this result was contrary to legislative history on the ground that the language of § 507(a)(7)(A)(iii) is "not overtly ambiguous" and thus resort to legislative history was inappropriate. *Id.* The district court also rejected the Government's contention that, under this interpretation, a corporate income tax could never qualify as an administrative expense. *Id.*

Alternatively, the district court found that even if the tax at issue was not of the type specified in § 507(a)(7)(A)(iii), it did not satisfy the "incurred by the estate" requirement in § 503(b)(1)(B)(i). *Id.* at 139. The court stated that there was a split of authority as to when taxes are incurred, but rejected the Government's position that the tax at issue was not incurred until the end of the taxable year. *Id.* The court ruled instead that all taxable activity in this case occurred prior to the date the Trustee was appointed. "[A]dministrative expenses were intended to cover only the 'actual, necessary costs and expenses of preserving the estate'" and allowing the tax at issue as an administrative expense would "subvert the intended purpose" of the statute. *Id.*

Finally, the district court concluded that, in accordance with its earlier judgment regarding the 1985, 1986, and 1987 taxes, the Government's claim for the 1988 tax was denied first-tier distribution under § 726(a)(1) as untimely filed, and would be classified under § 726(a)(3). *Id.* The district court reasoned: "The claims decided by this Court initially included the 1988 tax debt which the IRS then withdrew to file separately as an administrative expense. Because the relevant facts [the Government's failure to file a timely proof of claim] pertain equally to the 1988 tax claim, the Court's previous decision governs as well." *Id.*

This appeal followed.

## ANALYSIS

A district court's interpretation of the Bankruptcy Code is a matter of statutory construction subject to *de novo* review. *Acequia, Inc. v. Clinton (In re Acequia),* 787 F.2d 1352, 1357 (9th Cir.1986).

I. *Is the 1988 Tax Assessment an Administrative Expense?*

 The first issue in this case is whether the IRS's claim for PATCO's 1988 taxes is an administrative expense. In distributing the assets of the estate, administrative expenses have first priority. 11 U.S.C. § 507(a)(1). In general, tax claims that do not qualify as administrative expenses are accorded seventh priority. 11 U.S.C. § 507(a)(7). Section 503 defines administrative expenses. In particular,

11 U.S.C. § 503(b)(1)(B)(i).

8. 11 U.S.C. § 507 provides, in pertinent part, that:

 (a) The following expenses and claims have priority in the following order:

 (7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—
 (A) a tax on or measured by income or gross receipts—

 (iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, un-

der applicable law or by agreement, after, the commencement of the case[.]
11 U.S.C. § 507(a)(7)(A)(iii).

9. The electronic database incorrectly indicates that the district court's opinion has been reversed by *United States v. Towers (In re Pac. Atl. Trading Co.),* 33 F.3d 1064 (9th Cir.1994).

§ 503(b)(1)(B)(i) provides that administrative expenses include any tax "incurred by the estate, except a tax of the kind specified in § 507(a)(7) of this title[.]" 11 U.S.C. § 503(b)(1)(B)(i). Pursuant to this subsection of § 503, a claim is entitled to allowance as an administrative expense if two requirements are satisfied: the tax must be incurred by the estate *and* the tax must not be a tax of a kind specified in § 507(a)(7).

### A. "Incurred by the Estate"

■ The Government contends that the district court erred in concluding that the 1988 taxes were not "incurred by the estate." The Government argues that the definition of "incurred" in the legislative history of the Bankruptcy Code indicates that an income tax is incurred on the last day of the taxable period, rather than as it accrues. The Government also contends that the case law relied upon by the district court is not binding and does not justify a departure from congressional intent stated in the relevant legislative history. The Trustee counters that the administrative claim was based entirely upon PATCO's pre-petition activity, and therefore the liability was not "incurred by the estate" as required by language of § 503(b)(1)(B)(i).

■ In determining the scope of a statute, a court must look first to its language. *Reves v. Ernst & Young,* — U.S. —, —, 113 S.Ct. 1163, 1169, 122 L.Ed.2d 525 (1993); *Stackhouse v. Hudson (In re Hudson),* 859 F.2d 1418, 1421 (9th Cir.1988) (when the terms of a statute are unambiguous, the judicial inquiry is complete). Thus, the panel must first determine whether the phrase "incurred by the estate" has a plain meaning.

■ It is undisputed that an "estate" is not created until the debtor files for bankruptcy. 11 U.S.C. § 541(a). The term "incurred," however, is not defined in the Bankruptcy Code. In addition, the dictionary definition provides little guidance. According to its common usage, "incur" means to "become liable or subject to." Webster's Third New International Dictionary 1146 (4th ed. 1976). In this case, the income subject to taxes accrued pre-petition, when there was no bankruptcy estate, but became payable after the estate was created. Utilizing the dictionary definition, it is unclear whether the debtor "bec[a]me liable or subject to" the corporation's 1988 income taxes as they accrued, or whether the estate "bec[a]me liable or subject to" the 1988 income taxes when they were due. Accordingly, the phrase "incurred by the estate" is facially ambiguous.

This court has not yet resolved the question whether income taxes which straddle the petition date are "incurred by the estate." In *Official Creditors Comm. v. Tuchinsky (In re Major Dynamics, Inc.),* 897 F.2d 433 (9th Cir.1990), we held that a claim for post-petition taxes withheld by the debtor in possession qualifies as an administrative expense entitled to first lien priority status. *Id.* at 435. In *United States v. Ledlin (In re Mark Anthony Constr., Inc.),* 886 F.2d 1101 (9th Cir.1989), we determined that interest on post-petition taxes is an administrative expense. *Id.* at 1106. It is settled, then, that taxes incurred post-petition, and the fines, penalties and interest attached thereto are administrative expenses. *Major Dynamics* and *Mark Anthony,* however, do not resolve the narrow question at issue here because they concern taxes and interest both accrued and payable post-petition.

The Trustee's citation to two pre-Bankruptcy Code cases are inapposite for the same reason. In *McGugin v. District Director (In re Dolard),* 519 F.2d 282 (9th Cir.1975), we concluded that the bankruptcy court has jurisdiction to determine whether post-petition taxes are a cost or expense of the trustee's administration, even if the IRS failed to make a prior claim, notice of deficiency, or assessment for unpaid income taxes. *Id.* at 286. In *Nicholas v. United States,* 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966), the Supreme Court decided that a superseding trustee in bankruptcy was not liable for interest and penalties on federal income taxes incurred while the debtor operated under a Chapter XI arrangement. *Id.* at 689–90, 86 S.Ct. at 1682–83. Although some dicta from *Dolard* and *Nicholas* appears to advance the Trustee's argument that taxes are "incurred by the estate" as they accrue, these cases were decided prior to the enactment of the Bankruptcy Code, and concern taxes and/or interest that was

earned and payable post-petition. It thus remains for this court to determine whether a tax on income earned or accrued pre-petition which becomes ascertained or payable post-petition is "incurred by the estate" and therefore entitled to administrative priority.

■ If the statutory language is unclear, we look to legislative history to glean Congress' intent. *Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 1547–48, 79 L.Ed.2d 891 (1984). The Government argues that the district court erred in assigning the 1988 income taxes priority based upon the date the income was earned, rather than the last date of the taxable period. According to the Government, the legislative history of the Bankruptcy Code clearly indicates that Congress intended taxes on income for a particular period be considered "incurred" on the last day of the period.

In the process of drafting the 1978 version of the Bankruptcy Code, Congress addressed the interaction between the bankruptcy laws and the tax laws. "The initial discussions were begun in the House of Representatives, followed by debates in the Senate and ultimately concluded with the introduction of a compromise bill." *Hy–Test, Inc. v. Missouri Dep't of Revenue (In re Interco, Inc.),* 143 B.R. 707, 711 (Bankr.E.D.Mo.1992). The House of Representatives acknowledged that, historically and in the 1978 version of the Bankruptcy Code, "Congress has taken great care to insure that tax policy will not frustrate the operation of bankruptcy." H.R.Rep. No. 595, 95th Cong., 1st Sess. 274 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6231.

In 1973, the Commission on the Bankruptcy Laws of the United States, a commission created by Congress to study and recommend changes in the bankruptcy laws, prepared a report that included recommendations regarding the tax aspects of bankruptcy. *See Report of the Commission on the Bankruptcy Laws of the United States [July 1973] (Part I),* H.R. Doc. No. 137, 93d Cong., 1st Sess. 279, *reprinted in Collier on Bankruptcy,* Appendix Volume 2 at 1 (15th ed. 1995). The commission proposed that in a liquidation case, the corporation's tax year should be terminated at the date of the petition and the estate of the corporation should be treated as a separate taxable entity. *Report of the Commission on the Bankruptcy Laws of the United States [July 1973] (Part II),* H.R. Doc. No. 137, 93d Cong., 1st Sess. 279, *reprinted in Collier on Bankruptcy,* Appendix Volume 2 at 186 (15th ed. 1995).

The House rejected the Commission's proposal to treat the estate of a corporate debtor as a separate taxable entity. H.R.Rep. No. 595, 95th Cong., 1st Sess. 276 (1977) *reprinted in* 1978 U.S.C.C.A.N. 5787, 6233. Instead, the House Report accompanying title 11 of the House of Representatives' proposed bankruptcy bill stated: "With respect to a corporate debtor, section 346(c)(1) ... follows current law. The estate is not a separate taxable entity, and the corporation remains taxable as if the case had not been commenced." *Id.*

The Senate Judiciary Committee agreed with the House Report that the estate of a "corporated [sic] debtor is not a separate entity for tax purposes. The income of the debtor is to be taxed as if the case were not commenced[.]" S.Rep. No. 989, 95th Cong., 2d Sess. 45 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5831. After the Senate Judiciary Committee reported its version of the bill, it was referred to the Senate Finance Committee "for its consideration of the tax-related provisions in the bill." *Collier on Bankruptcy,* Appendix Volume 3 at VI–1 (15th ed. 1995). The Senate Finance Committee recommended amendments to several sections of the Senate's bill, all of which were adopted by the Senate on September 7, 1978. *Id.*

One of the amendments recommended by the Finance Committee was a "general definition of when a tax is 'incurred' for purposes of the various tax collection rules affecting the debtor and the estate." S.Rep. No. 1106, 95th Cong., 2d Sess. 7–8 (1978), *reprinted in Collier on Bankruptcy,* Appendix Volume 3 at VI (15th ed. 1995). As amended, § 346(a)(1) of the proposed legislation provided that:

(a) For purposes of this title—

(1) *a tax on* or measured by *income* or gross receipts for a taxable period *shall*

*be considered incurred on the last day of the taxable period;*

(2) a tax on or measured by payment of wages or compensation, production or use of property, transfers by death, gift, sale or otherwise (other than a tax on income from any such transfer), or other transactions or events shall be considered incurred on the last day of such transaction or event.

S. 2266, 95th Cong., 2d Sess., § 346(a) (1978) (as reported by the Senate Judiciary Committee and the Senate Finance Committee), *reprinted in Collier on Bankruptcy,* Appendix Volume 3 at VII (15th ed. 1995) (emphasis added). "After the Senate adopted its amendment . . . and sent the bill back to the House, the floor managers in both Houses met and agreed upon a compromise bill." *Collier on Bankruptcy,* Appendix Volume 3 at IX–1 (15th ed. 1995). The Senate Finance Committee's definition of when a tax is incurred was not included in the compromise bill. *Interco,* 143 B.R. at 711. Nevertheless, final statements of both House and Senate sponsors, Representative Edwards and Senator DeConcini,[10] reflect that Congress intended that the compromise bill adopt the substance of the Senate Finance Committee's definition of "incurred."

The House Amendment also adopts the substance of the definition in section 346(a) [of] the Senate amendment of when taxes are to be considered "incurred" except that the House amendment applies these definitions solely for purposes of determining which category of section 507 tests the priority of a particular tax liability. Thus, for example, the House amendment contains a special rule for the treatment of taxes under the 45–day exception to the preference rules under section 547 and the definitions of when a tax is incurred for priority purposes are not to apply to such preference rules. *Under the House amendment, for purposes of the priority rules, a tax on income for a particular period is to be considered "incurred" on the last day of the period.* A tax on or

measured by some event, such as the payment of wages or a transfer by reason of death or gift, or an excise tax on a sale or other transaction is to be considered "incurred" on the date of the transaction or event.

124 Cong.Rec. 32,416 (September 28, 1978) (statement of Rep. Edwards); 124 Cong. Rec. 34,016 (October 5, 1978) (statement of Sen. DeConcini) (emphasis added).

■ These statements indicate that Congress omitted the Senate Finance Committee's broad definition because of concern over the impact of the definition of the term "incurred" upon the rule for preferences. We are persuaded that it is equally apparent from these statements that, in the absence of an explicit definition, Congress intended for a tax on income to be considered "incurred" on the last day of the income period.

In addition to relying on the legislative history of the Bankruptcy Code, the Government also refers to various provisions of the Internal Revenue Code to reinforce its position that PATCO's 1988 income taxes were not incurred prior to the close of the reporting period. The Government asserts that by excluding pre-petition income from eligibility as an administrative expense, the court "effectively allow[s] the closing of the taxable year of the debtor upon commencement of the bankruptcy case and treat[s] the debtor corporation as if it were a separate taxable entity." The Government explains that, pursuant to § 1398(d)(2) of the Internal Revenue Code, an individual debtor generally is provided with the election to close his or her taxable year on the day before the bankruptcy case commences without the prior consent of the Internal Revenue Service. 26 U.S.C. § 1398(d)(2) (1988). Corporations, by contrast, are specifically precluded from creating two separate taxable entities by declaring a short tax year. 26 U.S.C. § 1399 (1988). The Government thus reasons that by allowing the Trustee to avoid the 1988 taxes as an administrative expense of the estate, the court is permitting PATCO to close its tax-

---

**10.** "Because of the absence of a conference and the key roles played by Representative Edwards and his counterpart floor manager Senator DeConcini, we have treated their floor statements

on the Bankruptcy Reform Act of 1978 as persuasive evidence of congressional intent." *Begier v. Internal Revenue Serv.,* 496 U.S. 53, 64 n. 5, 110 S.Ct. 2258, 2266 n. 5, 110 L.Ed.2d 46 (1990).

able year as of the petition date. According to the Government, this effectively allows a split in the tax year and change in the status of the debtor under the Bankruptcy Code even though PATCO could not have declared a short tax year under the Internal Revenue Code. Because we agree with the Government that the legislative history of the Bankruptcy Code compels the conclusion that the taxes at issue were "incurred by estate," we deem it unnecessary to look to the Internal Revenue Code for additional data regarding Congress' intent.

The Trustee argues that we cannot consider the definition included in the Senate Finance Committee's draft of § 346 because it never became law. The Trustee also contends that the statements of Representative Edwards and Senator DeConcini are themselves ambiguous, and that the proposed definition was intended to apply at best only to § 507, not to § 503. We disagree.

We must look to the legislators' explanation of what the term "incurred" was intended to mean precisely because the legislative intent is not clear on the face of § 503(b)(1)(B)(i), and because a definition is not provided elsewhere in the Code. Representative Edwards and Senator DeConcini provided a clear explanation of the intent of the statutory language, as well as a cogent explanation for the omission of a definition of the words "incurred by the estate" in the final version of the Code. We also reject the Trustee's implication that the legislators' comments refer only to § 507. Section 507(a)(1) cross-references § 503(b). As such, the legislators' reference to § 507 encompasses a reference to § 503. This must be the case because the word "incurred" appears in § 503 of the Bankruptcy Code and not in § 507.

The pertinent legislative history clearly demonstrates that the drafters of § 503(b)(1)(B)(i) intended that a tax on income should be treated as "incurred" on the last day of the taxable period. *But cf. In re O.P.M. Leasing Servs., Inc.,* 68 B.R. 979, 983–84 (Bankr.S.D.N.Y.1987) (concluding, without reference to the Senate Finance Committee's definition, that corporate income taxes are incurred as they accrue rath-

er than on the day they are assessed). Because the estate was in existence on December 31, 1988, we conclude that the corporate income taxes for 1988 were "incurred by the estate."

## B. *Section 507(a)(7) Exception*

The fact that PATCO's 1988 corporate tax liability was "incurred by the estate" does not mean that it is an administrative expense, however, if it falls within the exception set forth in 11 U.S.C. § 507(a)(7). *See* 11 U.S.C. § 503(b)(1)(B)(i). Section 507(a)(7) provides, in pertinent part:

(a) The following expenses and claims have priority in the following order:

. . . . .

(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or

(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case[.]

11 U.S.C. § 507.

It is undisputed that PATCO's 1988 income taxes do not satisfy § 507(a)(7)(A)(i) because the taxable year did not end "on or before the date of the filing of the petition." PATCO's 1988 taxable year ended December 31, 1988; the petition was filed September 15, 1988. Similarly, § 507(a)(7)(A)(ii) is not satisfied because the 1988 tax liability was

not assessed any time within 240 days before the petition date. The tax at issue, however, fits on its face within the narrow parameters set by § 507(a)(7)(A)(iii). Since § 507(a)(7)(A)(iii) is satisfied, PATCO's liability for the 1988 taxes is excepted from § 503 and given seventh priority.

A court should begin its analysis by applying the words of § 507(a)(7)(A)(iii) literally. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1030–31, 103 L.Ed.2d 290 (1989); *see also United States v. Ledlin (In re Mark Anthony Constr., Inc.)*, 886 F.2d 1101, 1105 n. 7 (9th Cir.1989) ("In interpreting statutes in this [the bankruptcy] field we avoid resort to legislative history where the statute is not overtly ambiguous."). Applied literally, the assessment for the 1988 taxable year falls squarely within the meaning of § 507(a)(7)(A)(iii). The taxes are not "of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C)" because § 523 only applies to individual and not corporate debtors. *Yamaha Motor Corp. v. Shadco, Inc.*, 762 F.2d 668, 670 (8th Cir.1985) (section 523(a) is applicable to individual debtors and will not be extended to corporate or partnership debtors); *Savoy Records, Inc. v. Trafalgar Assocs. (In re Trafalgar Assocs.)*, 53 B.R. 693, 696 (Bankr.S.D.N.Y.1985) (same). Additionally, the taxes were "not assessed before" the commencement of the case but were "assessable ... after, the commencement of the case[.]" 11 U.S.C. § 507(a)(7)(A)(iii).

The Government contends that the taxes at issue fail to satisfy § 507(a)(7)(A)(iii). Specifically, the Government claims that a literal application of the words of § 507(a)(7)(A)(iii) is improper because such an application: (1) interprets the subsection out of its proper context; (2) renders a portion of the statute superfluous; (3) contradicts legislative intent; and (4) leads to unintended consequences. We reject each of the Government's claims as mere exercises in semantics.

The Government first argues that the district court erred by failing to interpret § 507(a)(7)(A)(iii) in the context of the two preceding subsections. The Government reasons as follows:

Generally speaking, subsections 507(a)(A)(7)(i) [sic] and (ii) provide a priority for the last three income tax years that are assessable before the petition is filed without regard to when the assessment is actually made and for even more ancient tax years if the assessment is made within 240 days prior to the bankruptcy filing. Subsection 507(a)(7)(A)(iii) supplements these provisions [507(a)(7)(A)(i) and 507(a)(7)(A)(ii) ] by allowing priority treatment for such older tax years when the taxes for those years have not been assessed, but remain "assessable, under applicable law or by agreement after, the commencement of the case." *See* 1A *Collier on Bankruptcy* ¶ 11.01 [should be 11.02][d][i]–[iii] (15th ed. 1993). Reading subsection (iii) as a complement to subsections (i) and (ii), the statutory reference to taxes that have not been "assessed before" the petition must refer to taxes that "were assessable, but not assessed, before" the petition. The District Court's reading of § 507(a)(7)(A)(iii) as encompassing taxes that could not have been assessed before, but are assessable after, the petition was filed—such as the debtor's 1988 income tax—is noncontextual and incorrect.

This argument is without merit. There is no indication in the text of the statute itself that subsection (iii) functions as a supplement to subsections (i) and (ii). Rather, subsections (i), and (ii) and (iii) are provided as alternatives, separated by the word "or". In construing a statute, a court should interpret subsections written in the disjunctive as setting out separate and distinct alternatives. *United States v. Behnezhad*, 907 F.2d 896, 898 (9th Cir.1990), *superseded by statute on other grounds as stated in United States Parole Comm'n v. Williams*, 54 F.3d 820 (D.C.Cir.1995). As such, subsection (iii) on its face is not limited to a supplementary role.

Moreover, the Government fails to point to any valid authority supporting its interpretation that § 507(a)(7)(A)(iii) claims are limited to claims that arose pre-petition *and* were assessable pre-petition. The passage from *Collier on Bankruptcy* cited by the Government does not contain any lan-

guage which supports its position. The Government also fails to provide, nor could we locate, any case authority to back its contention.

The Government next claims that a literal application of the terms of the statute renders the phrase "not assessed before" superfluous. The Government explains that, under the plain meaning adopted by the district court, the phrase "not assessed before" is a redundant form of "but assessable after," because once a tax is "assessed" it is no longer "assessable."

██ A statute should be read to give meaning to all of its parts. *Boise Cascade Corp. v. EPA,* 942 F.2d 1427, 1432 (9th Cir. 1991). The Government's argument in the present case, however, distorts the statutory language. The Government contends that what Congress really meant when it referred to taxes "not assessed before, but assessable ... after, the commencement of the case" was taxes that were assessable, but not assessed, before the case's commencement. Because the IRS' interpretation is at odds with the plain language of the statute, it should be rejected.

The Government's third argument is that the statute is ambiguous. Accordingly, the Government urges this court to consider legislative history which allegedly demonstrates that Congress did not intend for § 507(a)(7)(A)(iii) to apply to post-petition liabilities which were not eligible to be assessed before the petition date. This is an unavailing argument for two reasons. First, the Government conceded to the district court that "on its face, [PATCO's] tax liability would satisfy the requirement of Bankruptcy Code Section 507(a)(7)(A)(iii)." Second, the phrase "not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case" has a clear meaning. The dictionary defines "assess" as "to determine the rate and amount of [as a tax, charge, or fine]." Webster's Third New International Dictionary 131 (4th ed. 1976). Section 507(a)(7)(A)(iii) thus plainly includes income taxes which, like those at issue in this case, the Government did not assess before November 2, 1988, but were assessable after the commencement of the case.

██ Finally, the Government claims the plain language interpretation mandates that every corporate income tax is ineligible as an administrative expense. More specifically, the Government contends that by applying the plain language of the statute, a corporate income tax that begins and ends post-petition, such as the debtor's 1989 income taxes, could be categorized as a seventh-level priority rather than as an administrative expense because the tax "was not assessed before but was assessable" after the commencement of the case. We will not presume Congress intended an absurd result. *See Bechtel Constr., Inc. v. United Bhd. of Carpenters,* 812 F.2d 1220, 1225 (9th Cir. 1987) ("Legislative enactments should never be construed as establishing statutory schemes that are illogical, unjust, or capricious."). Taxes for periods which occur entirely post-petition are afforded an administrative expense priority under § 503(b)(1)(B). *Hy-Test, Inc. v. Missouri Dep't of Revenue (In re Interco, Inc.),* 143 B.R. 707, 713 (Bankr.E.D.Mo.1992). Congress certainly did not intend for taxes earned entirely post-petition to be "relegated" to seventh level priority status. *Id.*

Two other courts have considered whether a corporate income tax claim for an entire tax year is of the kind specified by § 507(a)(7)(A)(iii) when the debtor corporation files for bankruptcy in the middle of its fiscal year but tax liability is not determined until the close of the fiscal year. In *Interco,* 143 B.R. 707, Interco and its affiliated entities filed for Chapter 11 relief on January 24, 1991, in the middle of a fiscal year running from February 25, 1990 to February 23, 1991. *Id.* at 708–709. After the claims bar date, the Missouri Department of Revenue filed a proof of claim for the corporate tax period "03/01/90–02/28/91." *Id.* at 709. Missouri argued that its claim was a post-petition administrative expense. After determining that the legislative history of § 503(b)(1)(B)(i) suggests that for priority purposes, a tax is incurred on the last day of the taxable period, the court held that the plain meaning of § 507(a)(7)(A)(iii) mandates

that seventh level priority status, rather than first level priority status, is afforded to taxes for pre-petition income. *Id.* at 714.

Similarly, in *In re O.P.M. Leasing Servs., Inc.,* 68 B.R. 979 (Bankr.S.D.N.Y.1987), the debtor filed for bankruptcy on March 11, 1981, in the middle of a tax year running from December 1, 1980 through November 30, 1981. *Id.* at 981. In April 1985, the Trustee filed O.P.M.'s state income tax return for its fiscal year ending in 1981 and paid the tax, interest, and penalty for the post-petition portion of the year. The Trustee, however, did not pay any taxes or interest for the December 1, 1980 through November 30, 1981 portion of the year. *Id.* In September 1985, the state of Indiana filed an administrative claim for the unpaid balance of O.P.M.'s tax liability. *Id.* Indiana contended that the entire fiscal year from December 1, 1980 through November 30, 1981 was an administrative expense because the tax bill became payable post-petition and, thus, qualified as an administrative expense. The court held that taxes on income earned pre-petition which were assessed post-petition "fit squarely within § 507(a)(7)(A)(iii)." *Id.* at 983.

We conclude that PATCO's income taxes fit squarely within the unambiguous terms of § 507(a)(7)(A)(iii). Because the 1988 income tax claim is a tax of a kind specified in § 507(a)(7), it is not entitled to administrative priority pursuant to § 503 of the Bankruptcy Code.

In conclusion, we hold that PATCO's 1988 income tax liability for income earned prior to the granting of the order for relief and the appointment of the Trustee on October 31, 1988 does not qualify as an administrative expense. Even though the taxes were "incurred by the estate" on December 31, 1988, the plain meaning of the phrase "not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case," persuades us that the 1988 tax claim fits squarely within the definition of § 507(a)(7)(A)(iii) and is therefore not an allowable administrative expense.

## II. *Should the 1988 Income Tax be Distributed Pursuant to § 726(a)(1)?*

██ The Government argues that, if PATCO's 1988 income tax liability is not an administrative expense within the meaning of § 503 of the Bankruptcy Code, it nevertheless should be allowed as a priority tax claim entitled to first distribution under 11 U.S.C. § 726(a)(1). The district court found that, because the Government failed to file a timely proof of claim, PATCO's 1988 tax liability was not entitled to first distribution under 11 U.S.C. § 726(a)(1), but rather should be distributed third with late-filed, non-priority claims under 11 U.S.C. § 726(a)(3).

██ Our decision in *United States v. Towers (In re Pac. Atl. Trading Co.),* 33 F.3d 1064 (9th Cir.1994) (*"Towers I"*), is dispositive and compels reversal of the district court on this issue. In *Towers I,* we held that the IRS retained its priority status and right to distribution under § 726(a)(1), even though it had not filed a timely proof of claim for the years 1985, 1986, and 1987. *Id.* at 1067. We reach the same result with respect to the 1988 taxes. Pursuant to *Towers I,* we hold that 11 U.S.C. §§ 501 and 502 provide that the Government's claim for federal taxes is an allowed claim. *Id.* at 1066. Allowed claims for federal taxes are afforded priority status regardless of when the proof of claim is filed. *Id.* at 1067. Section 726(a)(1) does not distinguish between late and timely priority claims. *Id.* Accordingly, the Government's unsecured priority claim for the 1988 income taxes is entitled to first distribution under § 726(a)(1) even though the Government failed to file a timely proof of claim.

**AFFIRMED IN PART AND REVERSED IN PART.**