United States Court of Appeals,

Eleventh Circuit.

No. 96-2145.

IN RE HILLSBOROUGH HOLDINGS CORPORATION, Debtors.

UNITED STATES of America, Plaintiff-Appellant,

v.

HILLSBOROUGH HOLDINGS CORPORATION, Defendant-Appellee.

July 10, 1997.

Appeal from the United States District Court for the Middle District of Florida. (No. 93-1743-CIV-T-21A), Charles M. Metzner, Judge.

Before BLACK, Circuit Judge, and FAY and ALARCON[*], Senior Circuit Judges.

PETER T. FAY, Senior Circuit Judge:

The issue here is whether the district court correctly ruled that when a corporate debtor's fiscal tax year straddles the filing of a petition for Chapter 11 reorganization, the portion of the year's income tax attributable to income earned during the prepetition part of the year is not allowable as an administrative expense under section 503(b)(1)(B)(i) of the United States Bankruptcy Code. 11 U.S.C. § 503(b)(1)(B)(i) (1988). We affirm.

I.

Hillsborough Holdings Corporation and its 32 wholly-owned subsidiaries ("Debtors") operate on a taxable fiscal year that runs from June 1st to May 31st. On December 27, 1989, Debtors filed a voluntary petition for reorganization under Chapter 11 of the U.S. Bankruptcy Code (the "Code"). Debtors later filed their consolidated federal income tax return for the tax year ending May 31, 1990, and paid in full the pro rata portion of the year's tax that they attributed to income earned during the postpetition part of the tax year (December 27, 1989, through May 31, 1990). The portion of the year's tax that Debtors attributed to income earned during the prepetition period (June 1, 1989, through December 27, 1989) remains unpaid.

---

[*]Honorable Arthur L. Alarcon, Senior U.S. Circuit Judge, for the Ninth Circuit, sitting by designation.

The Internal Revenue Service ("IRS"), on behalf of the United States of America ("Government"), filed an application with the bankruptcy court, seeking allowance of the unpaid taxes as a first priority administrative expense under Code sections 507(a)(1) and 503(b)(1)(B)(i). *See* 11 U.S.C. § 507(a)(1) (1994) (granting first priority to payment of administrative expenses as defined in § 503(b));  11 U.S.C. § 503(b)(1)(B)(i) (1988) (including as administrative expenses certain taxes that are "incurred by the estate").  Debtors objected to the application, claiming that the unpaid taxes were not "incurred by the estate" and were thus not entitled to administrative priority.  The bankruptcy court agreed.  *See In re Hillsborough Holdings Corp.,* 156 B.R. 318, 320 (Bankr.M.D.Fla.1993).  The district court affirmed.  The Government appeals.

II.

Prior to oral argument, we questioned *sua sponte* whether the district court's order affirming the judgment of the bankruptcy court ("Order") is a "final," appealable order under 28 U.S.C. § 158(d) (1994).  Debtors and the Government asserted that it is.  We agree.

Section 158(d) grants this Court jurisdiction to hear appeals only of "final" orders entered by district courts sitting in review of bankruptcy courts.  28 U.S.C. § 158(d) (1994); *see Lockwood v. Snookies, Inc. (In re F.D.R. Hickory House, Inc.),* 60 F.3d 724, 725 (11th Cir.1995) (noting that under § 158(d) courts of appeal have jurisdiction to review only final judgments and orders entered by district court).  Final orders are those that end litigation on the merits and "leave[ ] nothing for the court to do but execute the judgment." *Lockwood,* 60 F.3d at 726 (quoting *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)).  In the bankruptcy context, however, finality is not limited to the last order that concludes an entire bankruptcy case.  *See Martin Bros. Toolmakers, Inc. v. Industrial Dev. Bd. of Huntsville (In re Martin Bros. Toolmakers, Inc.),* 796 F.2d 1435, 1437 (11th Cir.1986).  To limit it so would ignore the nature of bankruptcy proceedings:

> Viewed realistically, a bankruptcy case is simply an aggregation of controversies, many of which would constitute individual lawsuits had a bankruptcy petition never been filed. While the goal of the bankruptcy process is to bring all present and potential contestants together and decide all the claims at the same time, a truly simultaneous resolution is impossible. Each claim represents a variable which must be quantified before a ... workable reorganization plan is adopted. Delayed review of any particular claim, especially claims

involving key assets of the debtor's estate, would render any ... plan purely contingent upon completion of appeals after conclusion of the case. Such an approach would be especially devastating in reorganizations, which proceed most smoothly when at least some variables become fixed and operate as the basis for further negotiation.

*Martin Bros.,* 796 F.2d at 1437.

In recognition of these principles, we have previously held that "any order within a bankruptcy case which concludes a particular adversary proceeding should be deemed final and reviewable." *Id.; see Charter Co. v. Prudential Ins. Co. of America (In re Charter Co.),* 778 F.2d 617, 621 (11th Cir.1985) ("In bankruptcy proceedings, it is generally the particular adversary proceeding or controversy that must have been finally resolved, rather than the entire bankruptcy litigation"). The district court's Order fits within that category; it concludes the controversy between Debtors and the Government regarding the Government's entitlement to have its claim paid as an administrative expense. Nothing remains for either the district court or the bankruptcy court to do with respect to the administrative claim. Delaying review would only hinder Debtors' attempts to formulate a reorganization plan. We see no reason for that. Accordingly, we conclude that this Court has jurisdiction to review the Order.

## III.

We review questions of law in bankruptcy proceedings, whether decided by the bankruptcy court or by the district court, de novo. *See Varsity Carpet Servs., Inc. v. Richardson (In re Colortex Industries, Inc.),* 19 F.3d 1371, 1374 (11th Cir.1994).

Code Section 507(a)(1) accords first priority to the payment of expenses that are incurred in the administration of a bankruptcy estate. 11 U.S.C. § 507(a)(1) (1994). An administrative expense, as defined in section 503(b), includes "any tax incurred by the estate, except a tax of a kind specified in section 507(a)(7)...."[1] 11 U.S.C. § 503(b)(1)(B)(i) (1988). Only if a tax (1) IS incurred by the estate *and* (2) IS NOT of a kind specified in section 507(a)(7) will it qualify for administrative priority. Otherwise, the tax will generally be paid as a seventh priority claim. *See*

---

[1]The Bankruptcy Reform Act of 1994, Pub.L. No. 103-394, redesignated § 507(a)(7) as § 507(a)(8). This case was initiated prior to that change; we adhere to the designation applicable at the start of these proceedings.

11 U.S.C. § 507(a)(7) (1988) (granting seventh priority to certain tax claims) (currently codified at 11 U.S.C. § 507(a)(8) (1994)).

The bankruptcy court expressly ruled that the IRS's claim did not meet either of the aforementioned requirements. *See In re Hillsborough Holdings Corp.,* 156 B.R. 318, 320 (Bankr.M.D.Fla.1993) (stating first that IRS's claim "fit squarely" within § 507(a)(7) and second that "[t]o the extent that income was ... earned by the pre-petition debtor, the tax was not incurred by the estate"). The district court affirmed, explicitly holding that the unpaid taxes were of a kind specified in section 507(a)(7) and impliedly holding that the taxes were not incurred by the estate. *See* R1-20-2 (finding that taxes due were kind specified in section 507(a)(7) and that "[t]he amount due for prepetition taxes was not the responsibility of the estate because [the estate] was not in existence at the time, and no activity of the estate created the liability"). The Government contends that both courts erred.

As to the first issue, whether the unpaid portion of the year's taxes was "incurred by the estate," the Government argues that the entire year's taxes were "incurred" on the last day of the taxable year, which in this case fell within the period of the estate's existence. *See* 11 U.S.C. § 541(a) (1994) (stating that commencement of bankruptcy case creates bankruptcy estate); 11 U.S.C. § 301 (1994) (specifying that voluntary bankruptcy case is commenced by filing of petition); *see also Towers v. United States (In re Pacific-Atlantic Trading Co.),* 64 F.3d 1292, 1229-1301 (9th Cir.1995) (holding under similar facts that prepetition taxes are incurred by estate). Debtors counter-argue that because the unpaid portion of the year's taxes is attributable to income earned not by the estate but by the prepetition debtor, the taxes could not have been "incurred by the estate." *See In re O.P.M. Leasing Servs. Inc.,* 68 B.R. 979, 983-85 (Bankr.S.D.N.Y.1987) (holding under similar facts that prepetition taxes are not incurred by estate). We need not decide which of these positions is correct; we can assume for purposes of this appeal that the entire year's taxes were incurred by the estate, but we still have difficulty accepting the Government's argument that the unpaid taxes are not "of a kind specified in section 507(a)(7)."

Section 507(a)(7) states:

(a) The following expenses and claims have priority in the following order:

* * * * * *

(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or

(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case[.]

11 U.S.C. § 507(a)(7) (1988). Debtors and the Government agree that only subsection (iii) is applicable to this case. Likewise, the parties agree that subsection (iii)'s references to section 523(a)(1) have no effect here. Thus, we need only consider whether the unpaid taxes were "not assessed before, but [were] assessable ... after[ ] the commencement of the case."

The appropriate starting point for any statutory analysis is the statute's plain language. *See McNely v. Ocala Star-Banner Corp.,* 99 F.3d 1068, 1073 (11th Cir.1996) (quoting *Shaw v. Delta Air Lines,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)), *cert. denied,* --- U.S. ----, ----, 117 S.Ct. 1819, 1821, --- L.Ed.2d ---- (1997). The unpaid taxes fit squarely within the plain language of subsection (iii); the taxes were "not assessed before" Debtors filed their petition, but were "assessable after" the filing. Under the plain language, the taxes should be excluded from administrative priority.

The Government asserts that we cannot adhere to the statute's plain language because its application leads to "absurd" results. For example, a plain reading of "not assessed before, but assessable after" would also exclude from administrative priority the portion of the year's tax that Debtors did pay, i.e., the portion attributable to income earned during the postpetition period. The absurdity of that result, according to the Government, is evidenced by the fact that Debtors, the bankruptcy court, and the district court—all without question—treated the taxes attributable to

postpetition income as administrative expenses. Similarly, the plain reading would exclude from administrative priority the income taxes for tax years that both begin and end postpetition. The Ninth Circuit has expressly noted the absurdity of that outcome. *See Towers v. United States (In re Pacific-Atlantic Trading Co.),* 64 F.3d 1292, 1303 (9th Cir.1995); *see also Missouri Dep't of Revenue v. L.J. O'Neill Shoe Co. (In re L.J. O'Neill Shoe Co.),* 64 F.3d 1146, 1150 (8th Cir.1995) (stating that literal interpretation of section 507(a)(7)(A)(iii) produces result at odds with Congress's intentions).

To eliminate these "absurd" results, the Government suggests (based on numerous references to the legislative history) that the phrase "not assessed before, but assessable after" be interpreted as referring to taxes that "were assessable both before and after" the filing. Two Circuits have previously rejected that same argument. *See Towers,* 64 F.3d at 1303 (stating that Government's argument "distorts statutory language"); *L.J. O'Neill,* 64 F.3d at 1151 n. 6 (finding that although Government's argument was not implausible, court's own interpretation was more consistent with statute as written). Ours is now the third.

Like both the Eighth and Ninth Circuits, we find that the Government's proposed interpretation stretches the statutory language so far from its plain meaning that we must reject it. *See Towers,* 64 F.3d at 1303; *L.J. O'Neill,* 64 F.3d at 1151 n. 6; *see also Burns v. United States (In re Burns),* 887 F.2d 1541, 1545 ("best indicators of congressional intent" are "the language and structure of the Code itself"). We choose instead to adopt an alternative, " "permissible meaning[,]' " which " "produces a substantive effect that is [more] consistent with the rest of the law[:]' "

> We believe that subsection (iii) can be read, like the other subsections of 507(a)(7)(A) to address only *prepetition taxable activity or events. See* 11 U.S.C. § 507(a)(7)(A)(i) (prepetition tax year ending on or before date of filing) & 507(a)(7)(ii) (tax assessed within the 240 days prior to filing); *see also Small Business Admin. v. Preferred Door Co., Inc. (In re Preferred Door Co.),* 990 F.2d 547, 549 (10th Cir.1993) (noting that section 507(a)(7) deals with *prepetition* taxes). Thus, we interpret section 507(a)(7)(A)(iii) to address taxes derived from prepetition events "not assessed before, but assessable ... after, the commencement of the case."

*L.J. O'Neill,* 64 F.3d at 1151 (emphasis in original) (quoting in part *United Savings Ass'n v. Timbers of Inwood Forest,* 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988)). That approach, as applied here, renders the unpaid portion of Debtors' tax a nonadministrative claim. That approach

also avoids the "absurd" consequences cited by the Government.

In opposition to our adopting the approach taken by the Eighth Circuit, the Government argues that section 507(a)(7) does not permit different "portions" of a single tax to be treated differently; the section supposedly grants priority only on a tax-by-tax basis. The Government spends considerable time discussing the Internal Revenue Code, progressive tax rates, and the inability of corporate debtors to close their taxable year on the filing date. *See* 26 U.S.C. § 1398(d)(2)(D) (1994) (permitting individual debtors in Chapter 7 or 11 case to elect to divide taxable year in which bankruptcy case is commenced into two short taxable years). The gist of these arguments is that by allowing Debtors to divide the tax claim into an administrative expense "portion" and a seventh priority tax "portion," we are allowing Debtors to subvert the tax code. We find the Government's arguments unpersuasive.

Permitting the tax claim to be divided into two "portions" for priority purposes will have no effect on the total tax liability actually owed by Debtors, the tax rate applied to Debtors income, or the length of Debtors' taxable year. In keeping with the tax code, the taxes will be imposed as if no bankruptcy petition had ever been filed. The *payment* of the taxes, however, will be governed by the principles and priorities of the bankruptcy laws. *See L.J. O'Neill,* 64 F.3d at 1152. Those principles often mandate the division of claims into two or more "portions." *Id.*

### IV.

We conclude that the bankruptcy court and the district court properly denied administrative priority to the IRS's claim for the portion of the year's tax that was attributable to income earned during the prepetition period.[2] The Order of the district court is AFFIRMED.

---

[2]The actual method Debtors used to calculate the prepetition and postpetition portions of their tax liability is somewhat of a mystery. The bankruptcy court refers to the paid taxes as the "pro-rata portion of the *total taxes accrued* between [the filing date and the last day of the taxable year]." *In re Hillsborough Holdings Corp.,* 156 B.R. 318, 319 (Bank.M.D.Fla.1993) (emphasis added). The district court refers to the paid taxes as "taxes attributable to the portion of the *year* subsequent to [the filing date]." R-1-20-1. The U.S. refers to the paid taxes as "the pro rata portion of the year's tax *attributable to the [postpetition period,]*" but also refers to them as "the pro rata portion of the [year's tax] that [D]ebtors *attributed to income earned* [in the postpetition period]." Appellant's Br. at 4, 12.