GRABER, Circuit Judge,
dissenting:
I respectfully dissent. The majority holds the phrase “any other person” in 18 U.S.C. § 876(c) includes only natural persons. In my view, the majority errs. Section 876(e) prohibits mailing a threat to a corporation or other institution. Therefore, I would hold that Defendant’s conduct here may have violated the statute.
Section 876(c) of Title 18 provides: Whoever knowingly so deposits or causes to be delivered as aforesaid, any communication with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined under this title or imprisoned not more than five years, or both. If such a communication is addressed to a United States judge, a Federal law enforcement officer, or an official who is covered by *1099 section 1114, the individual shall be fined under this title, imprisoned not more than 10 years, or both.
(Emphasis added.) Other provisions of the statute likewise prohibit a communication “addressed to any other person” and containing a ransom demand, 18 U.S.C. § 876(a); and a communication, made with an intent to extort, “addressed to any other person” and containing threat to injure property or reputation or to accuse a person of a crime, 18 U.S.C. § 876(d).
The statute does not define “addressed to” or “person.” The word “person” sometimes means only “a human being.” But, by long-standing congressional command, a court should interpret the word “person” in a statute as including corporations and several other types of entities unless the context shows otherwise. 1 U.S.C. § 1. Similarly, the phrase “addressed to” has several possible definitions. Thus, considered in isolation, the phrase “addressed to any other person” is ambiguous as to whether or not it describes a communication mailed to a corporation.
The majority reasons that the context of “addressed to any other person” demonstrates that the “person” in that phrase must be a natural person because it is obvious that the “person” in a “threat to injure the person of the addressee” is a natural person. Maj. op. at 1095. The majority further holds that only the markings on the outside of the piece of mail establish the addressee. Id at 1095-96. Finally, the majority concludes that Defendant’s communications were not addressed to any natural persons. Id at 1098. The result of the majority’s interpretation is that the statute prohibits sending a threatening communication only if the outside of the envelope or package explicitly directs delivery to a natural person. Id
Congress enacted § 876 to protect individuals from mailed threats of kidnapping, ransom demands, threats of bodily injury or death, and certain other serious threats. Act of July 8, 1932, Pub.L. No. 72-274, 47 Stat. 649. Indeed, Congress went to some trouble to define broadly the prohibited communications — the original version of § 876 expressly covered “any” letter or other communication, written or printed, with or without any sort of signature, sent by almost any conceivable method of mailing, containing a threat against either the addressee or another.[1] Id Given this breadth of coverage, it is unlikely that Congress intended to differentiate, for instance, between a death threat sent expressly and directly to a living person and one mailed to a corporation that employs that person. After all, both threats have exactly the same ill effect.
Yet under the majority’s interpretation, the statute would not apply to an individual who mailed a letter bearing on its outside the address, “Mom and Pop Grocery, Inc.” or “The DUII Defenders, LLC,” and containing inside the warning, “Tomorrow I will come and shoot every one of you dead.” The statute could not touch someone who mailed an envelope of white pow *1100 der to the “University Center Mosque” with the message, “This will kill you all.” In fact, despite the statute’s current provision for a lengthier sentence if a threatening communication is addressed to a federal judge, the statute would not prohibit in the first place someone’s mailing a letter to “The Ninth Circuit Court of Appeals” with the threat, “I will hunt down and take vengeance on the judges responsible for today’s decision. It is an outrageous injustice, and you will not escape.” The majority’s interpretation produces absurd results.
“We will not presume Congress intended' an absurd result.” Towers v. United States (In re Pacific-Atlantic Trading Co.), 64 F.3d 1292, 1303 (9th Cir.1995). Rather, “[i]t is a cardinal canon of statutory construction that statutes should be interpreted harmoniously with their dominant legislative purpose.” United States v. Gallenardo, 579 F.3d 1076, 1085 (9th Cir.2009) (internal quotation marks omitted). Here, Congress manifestly intended to deter the sending of death threats and threats of bodily injury, and narrowly interpreting the phrase “addressed to any other person” runs counter to that purpose. Both the canon against absurd results and the purpose of § 876 weigh against the majority’s interpretation.
Furthermore, nothing in the legislative history of § 876 suggests that Congress intended to restrict the prohibited communications to those mailed directly to a natural person. Indeed, when Congress amended § 876 in 1935 to permit prosecution in the district to which a communication was mailed, Congress had before it among examples of threatening communications a letter sent to “the Sisters of Mercy Hospital, Kalispell, Mont.” S.Rep. No. 74-873, at 3 (1935). The examples considered by Congress in relation to a statute may provide some assistance in its interpretation. See, e.g., Flores-Figueroa v. United States, — U.S.-, 129 S.Ct. 1886, 1893, 173 L.Ed.2d 853 (2009) (looking to examples of identity theft cited in a committee report to decide whether Congress intended to limit an identify theft statute to the circumstance in which the offender knows that he or she has misappropriated the means of identification of an actual person). Here, the unremarked inclusion of a letter to an institution, among the examples of threatening communications presented to Congress, supports the conclusion that Congress did not intend to restrict § 876 to only those communications displaying on the outside of an envelope the name or title of a natural person.
We need not interpret the scope of § 876 to be as limited as the majority does, and there is a different interpretation by which we may construe the statute more broadly. I note that a corporate entity, although it may be deemed a person in many legal contexts, does not have opposable thumbs. It cannot physically open its mail or, even if envelopes are slit by a machine, read the contents to determine where to direct the missive. Common sense informs us that any piece of mail addressed to a corporation implicitly is addressed also to the natural person who will open it and deal with its contents on behalf of the corporation. Therefore, a threatening letter “addressed to” Mom and Pop Grocery, Inc., is addressed to Mom or Pop, its CEO, or a secretary, as well as to the corporation. Section 876(c) covers mail bearing the address of a corporation because such mail qualifies, by virtue of the implicit human addressee, as “addressed to any other person.”
This interpretation of § 876(c) does not make the phrase “addressed to any other person” superfluous. That provision would still bar prosecution of someone who mailed to himself or herself a communication containing threats, because a letter to *1101 oneself is not “to any other person.” § 876(c) (emphasis added). For example, one could not be prosecuted for mailing a copy of one’s journal to oneself even if the journal contained dire threats against one’s enemies. And it makes sense that Congress would not have intended to prohibit such conduct — the recipient of a threat penned by himself or herself presumably suffers no harm thereby.
My “implicit addressee” interpretation of § 876(c) is a plausible reading in context, and it creates no tension between the use of the word person in the phrases “addressed to any other person” and “any threat to injure the person of the addressee” because both instances refer to a natural person. Those are the arguments underlying the majority’s construction; my interpretation satisfies them as well. Moreover, unlike the majority’s construction, my interpretation avoids the absurd result of shielding someone who mails a death threat to a corporation, and it is consistent with the legislative history and purpose of the statute. In these respects, it is superior to the majority’s construction.
Because I would hold that a natural person is always an implicit addressee when a letter is addressed to a non-natural person, I would not reach in this case the question whether a court may look to materials inside an envelope to determine whether the communication is addressed to a person. The statute would apply to the communications mailed by Defendant regardless.
If the majority agreed that the statute prohibits Defendant’s conduct, we then would have to decide whether the First Amendment protects his speech or whether his speech represents unprotected “true threats.” See Virginia v. Black, 538 U.S. 343, 359, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003) (“ ‘True threats’ encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.”). But because the majority does not reach that issue, I do not consider it here. Similarly, the majority does not reach Defendant’s contention that there was insufficient evidence of his specific intent to threaten, and I also decline to analyze it.
In summary, I would hold that communications mailed to the New York Times, the Los Angeles Times, the Phoenix New Times, the Associated Press, theshizz.org, and azpunk.com may violate 18 U.S.C. § 876(c) because those communications are implicitly addressed to the natural person who necessarily will open and read them.

. As originally enacted, § 876 applied to whoever:
with intent to extort from any person any money or other thing of value, shall knowingly deposit or cause to be deposited in any post office or station thereof, or in any authorized depository for mail matter, to be sent or delivered by the post-office establishment of the United States, any written or printed letter or other communication with or without a name or designating mark subscribed thereto, addressed to any other person, and containing any threat (1) to injure the person, property, or reputation of the addressee or of another or the reputation of a deceased person, or (2) to kidnap any person, or (3) to accuse the addressee or any other person of a crime, or containing any demand or request for ransom or reward for the release of any kidnapped person....
§ 1, 47 Stat. at 649.