**In re: Steven S. SABER, Debtor.**

**Esther Slobodinsky, Plaintiff–Appellant,**

**v.**

**Sonya L. Salkin, Defendant–Appellee.**

**No. 00–12808.**

United States Court of Appeals, Eleventh Circuit.

Sept. 13, 2001.

Lewis H. Cohen, Steven S. Saber, Hollywood, FL, for Plaintiff–Appellant.

Ronald G. Neiwirth, Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., Miami, FL, for Defendant–Appellee.

Before TJOFLAT and WILSON, Circuit Judges, and RESTANI,* Judge.

---

\* Honorable Jane A. Restani, Judge, U.S. Court of International trade, sitting by designation.

1. At the time of the complaint, Saber was an attorney whose practice included, among other things, bankruptcy law. Saber operated

---

TJOFLAT, Circuit Judge:

## I.

On September 15, 1998, Sonya Salkin, as trustee for the bankruptcy estate, instituted an adversary proceeding in the United States Bankruptcy Court for the Southern District of Florida. The adversary proceeding sought to avoid a transfer of the real property located at 2016 Harrison Street, Hollywood, Florida (the "Counsel Building"), from Steven Saber, the debtor, to Esther Slobodinsky, his mother.[1] Count One of the complaint sought to avoid the transfer of the Counsel Building from Saber to Slobodinsky as fraudulent. Count One alleged that the Counsel Building had become the sole subject of a "Florida Land Trust Agreement" on December 28, 1990, and that by August 29, 1991, Saber had received assignments of 100% of the beneficial and legal interests in the land trust. Therefore, "[b]y virtue of Saber's ownership of the entire legal and equitable interests in the Property, the Land Trust terminated by operation of law, and Saber became the fee simple owner of the Property." Count One alleged that, subsequently, on July 8, 1993, Saber executed an "Assignment" of the beneficial interest in the land trust to Slobodinsky. Then, on January 9, 1998, he executed a quit claim deed from himself, as "Successor Trustee" of the land trust, to Slobodinsky, as "Second Successor Trustee," thereby purporting to convey the legal interest in the land trust to Slobodinsky. The deed was recorded on January 20, 1998. The purported transfer occurred within one year of the bankruptcy, at a time when

his practice out of the Counsel Building. Slobodinsky resided with Saber at his home at the time the complaint was filed. Saber is representing Slobodinsky in this appeal.

Saber was clearly insolvent.[2] Thus, Count One asked that the court "determin[e] that the subject real property is property of the bankrupt estate and avoid[ ] the purported transfer to [Slobodinsky]" as fraudulent.

Count Two of the complaint realleged the allegations of Count One, then sought avoidance of the transfer as preferential, because the transfer was perfected (by the recording of the quit claim deed) within ninety days of the bankruptcy filing and was made at a time that the debtor was demonstrably insolvent.[3] "The clear effect of the transfer was to allow [Slobodinsky], if indeed she is a creditor ..., to have obtained a far greater proportion of the obligation owed to her than any other creditor would receive from a hypothetical Chapter 7 liquidation, which is the statutory standard." Thus, Count Two asked for a judgment against Slobodinsky, "avoiding the transfer of the subject real estate and determining that the same is property of the Bankrupt Estate."

Importantly, the complaint never sought a declaration from the bankruptcy court that the quit claim deed from Saber to Slobodinsky regarding the Counsel Building conveyed nothing. Although the complaint asserted that, according to land trust law, a merger had occurred in Saber on August 29, 1991, thereby making him fee simple absolute owner of the Counsel Building, the two counts of the complaint operated on the assumption that there had been a conveyance to Slobodinsky that needed to be avoided.

Slobodinsky's answer to the complaint asserted as an affirmative defense that there was "no merger of legal and equitable interest which would vest title in the property solely in [Saber]." Slobodinsky asserted as an additional affirmative defense that she had been the holder of 100% of the beneficial interest in a valid land trust since 1993. As an alternative affirmative defense, she alleged that she provided consideration for the Counsel Building, "and to the extent that she may not be deemed the holder of the entire beneficial interest under the Florida Land Trust, would be entitled to a constructive trust on the property."[4] Slobodinsky did not ask for a declaration that there was no merger in Saber and that, therefore, Saber's quit claim deed actually conveyed a legal interest in the Counsel Building to her.[5]

2. Saber suffered a malpractice judgment of $613,584.90 against him on January 16, 1998, at the conclusion of a jury trial. The judgment was entered on February 2, 1998. Mediation of the malpractice suit failed on January 9, 1998—the same day that Saber executed the quit claim deed to Slobodinsky.

3. Count Two further alleged that Slobodinsky was an insider (because she is Saber's mother), and that if Saber and Slobodinsky asserted that the transfer was made on account of an antecedent debt, rather than for no consideration, then the transfer was preferential.

4. Slobodinsky's answer presented seven "affirmative defenses": (1) the action is barred by the statute of limitations; (2) "[a]ny purported transfer of property held in a Florida Land Trust is not property of the estate," and therefore any transfer by Saber as trustee of the land trust to Slobodinsky as trustee was not fraudulent to creditors of the bankruptcy estate; (3) there was no merger in Saber; (4) Slobodinsky holds 100% beneficial interest in the land trust; (5) she gave Saber consideration for the property; (6) the complaint fails to state a cause of action because "the transfer was not an interest of [Saber] in property" and the transfer was not made with the intent to hinder creditors; and (7) she was a "transferee for value and lacked knowledge of the voidability of any transfer."

5. The answer concluded by stating, "WHEREFORE the Defendant, ESTHER B. SLOBODINSKY, prays that this Court deny the relief sought by the Plaintiff and enter a judgment in favor of Defendant, ESTHER B. SLOBODINSKY, and to tax costs in the prosecution of this matter."

On October 30, 1998, Salkin moved the bankruptcy court to enter summary judgment avoiding as fraudulent the transfer of the Counsel Building. Salkin again claimed that a merger had occurred in Saber on August 29, 1991, when he owned both 100% legal title and 100% beneficial interest in the land trust. Salkin contended that the July 8, 1993 assignment of a beneficial interest in the (now extinct) land trust to Slobodinsky was "a nullity." For relief, Salkin asked that the court determine "that title to the Harrison Street building was fraudulently conveyed by [Saber] to Slobodinsky; that such conveyance is voidable and is avoided for the benefit of the estate." As in her complaint, Salkin failed to ask for a declaration that Saber's quit claim deed to Slobodinsky conveyed nothing.

Slobodinsky responded to Salkin's motion for summary judgment on November 23, 1998, and simultaneously moved for summary judgment against Salkin. Slobodinsky's pleading contended that no merger had occurred according to Florida Land Trust law. Slobodinsky thus asked that the court "deny the Plaintiff['s] Motion for Summary Judgment and enter Summary Judgment in [Slobodinsky's] favor and dismiss Counts I and II in this case with prejudice."

On February 24, 1999, the bankruptcy court, in a memorandum order, ruled on the cross-motions for summary judgment. The same day, the court issued a "Partial Final Judgment," which stated that it was being entered pursuant to the court's order on the parties' cross-motions for summary judgment.[6]

The court's February 24 memorandum order denied Salkin's motion for summary judgment against Slobodinsky as to the avoidance of the alleged fraudulent transfer of the Counsel Building. The court's reason for denying Salkin's motion was that there was never a transfer of the Counsel Building from Saber to Slobodinsky at all, because a merger had occurred in Saber: "[T]his Court, in conformity with Florida case law and with respect to § 689.071, holds that the Merger Doctrine operated to terminate the Land Trust on August 29, 1991, when Saber obtained 100% of the equitable interest in the personal property of the Land Trust and 100% of the legal and equitable interest in the real property of the Land Trust." Because Saber was the fee simple absolute owner, the court reasoned, "his July 8, 1993 assignment to Slobodinsky of 'all interest in the property held subject to said trust agreement' was ineffective in transferring the Counsel Building or an interest therein to Slobodinsky." Further, because Saber was still the fee simple absolute owner on January 9, 1998, when he executed the quit claim deed as successor trustee of the land trust to Slobodinsky as second successor trustee, the quit claim deed "was simply a nullity." "Because no property was transferred to Slobodinsky on January 9, 1998 or within one year prior to the Petition Date, because Saber owned the Counsel Building as of the Petition Date, and because the Counsel Building is property of Saber's Bankruptcy Estate," the court denied the relief Salkin was seeking: a judgment avoiding the "alleged transfer of the Counsel Building."

The court did not explicitly rule on Slobodinsky's cross-motion for summary judgment, but the parties, in their briefs to us, have treated the bankruptcy court's memorandum order as having denied the motion. The question before the bankruptcy court

---

**6.** The language of the "Partial Final Judgment" reveals that the document granted neither party a partial final judgment. Rather, as described *infra* Part III, it merely reiterated the court's decision denying the parties' motions for summary judgment.

was whether Slobodinsky had received the Counsel Building via a fraudulent transfer. While Salkin contended that the transfer was fraudulent and Slobodinsky asserted that the transfer was licit, both agreed that there was a transfer. The court disagreed, however, finding that there had been no transfer at all. It thus necessarily rejected Slobodinsky's motion for summary judgment, even if the rejection was merely implicit.

In its memorandum order, the court did *not* take the additional step of quieting the title to the Counsel Building. The court could have done so by forcing Slobodinsky to give Salkin a quit claim deed to the building, or by issuing a declaratory judgment. Thereafter, Salkin could have recorded the deed or judgment and the title would have been clear.

On March 4, 1999, Slobodinsky appealed the bankruptcy court's memorandum order to the district court. Subsequently, on May 7, 1999, the bankruptcy court "closed" the adversary proceeding. With the adversary proceeding closed, Salkin assumed that the bankruptcy court had conclusively determined that the Counsel Building was part of the bankruptcy estate. She therefore moved the court, on May 27, 1999, to approve the sale of the building; she amended her motion on June 15 and again on June 21. The bankruptcy court docket sheet reveals that Slobodinsky, as an interested party, objected to the sale.

On June 28, 1999, the bankruptcy court granted Salkin's motion, approving the sale of the Counsel Building to Abe Saada as "fair and reasonable." The court found that Saada was a bona fide purchaser, that the transaction was made in good faith and at arm's length, and that the sale was authorized pursuant to 11 U.S.C. § 363(f)(4).[7] The court treated Salkin's motion as though it sought approval of the sale of the Counsel Building from the bankruptcy estate. And, in approving the sale, the court continued to act as if its memorandum order denying the parties' motions for summary judgment had resolved the status of the Counsel Building's title.[8] In fact, the court's failure to quiet the title had left a cloud on the record of the building's title.

## II.

The present appeal derives from the bankruptcy court's denial of the parties' motions for summary judgment on February 24, 1999. On March 4, Slobodinsky appealed the bankruptcy court's decision to the district court. Subsequently, on May 7, 1999, the bankruptcy court closed the adversary proceeding. On May 19, 2000, the district court affirmed the bankruptcy court's February 24 decision. In a two-page order, the district court declined to reverse the bankruptcy court because "[t]he appellants have not persuaded [the court] that the Bankruptcy Court's decision is clearly erroneous." The district court merely quoted the bankruptcy court in holding that, according to Florida law, a merger occurred when the legal and equi-

---

7. 11 U.S.C. § 363(f) reads, in pertinent part:
 (f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
 . . . .
 (4) such interest is in bona fide dispute.

8. The court's treatment of the tenants of the Counsel Building provides evidence of this

belief. For example, as to one lessee who occupied part of the building pursuant to a written lease with Slobodinsky as trustee of the land trust, the court held "that such lease is invalid as [Slobodinsky] did not have power to enter into the lease because at the time it was entered into, the real property in question constituted property of the estate."

table interests were united in the person of Saber.

Slobodinsky now appeals the district court's May 19 decision.

### III.

### A.

In her brief to this court, Slobodinsky asserts that jurisdiction is proper because this is "an appeal from a Final Order" of the district court, which reviewed a final order of the bankruptcy court. Slobodinsky further asserts that this involved a " 'FINAL' Order on appeal" because the

case "finally resolved the question of law on a dispute on the merits and leaves nothing for the Court to do but execute its Order."[9] Salkin, in turn, avers that jurisdiction is proper because this is an appeal from a final order of the district court, which affirmed a partial summary judgment of the bankruptcy court; the partial summary judgment disposed of all issues pertaining to Slobodinsky, and the remainder of the adversary proceeding was concluded.[10]

Contrary to the parties' representations, however, the bankruptcy court never en-

**9.** Slobodinsky's jurisdictional statement reads, in full:

This is an appeal from a Final Order of the United States District Court [sic] Southern District of Florida, sitting as an Appellate Court, reviewing a Final Order of the Bankruptcy Court. The District Court had jurisdiction to review the Bankruptcy Final Order under 28 U.S.C. Section 158(1). This court has jurisdiction to review the Final Order of the District Court on Appeal, under 28 U.S.C. Section 158(a) Bankruptcy Court [sic]. This Court has jurisdiction to review the bankruptcy court's order under 28 U.S.C. § 158(6)(2).

The Final Order of the Bankruptcy Court is subject to mandatory review. *In re: American Freight System, Inc.,* 153 B.R. 316 (D.Kan.1993)[.]

This court has jurisdiction over appeals from all Final Orders of the District Court. See *In re: Wallace & Gale Co.,* 72 F.3d 21 (C.A.4 1995), and See *In re: Casal,* 998 F.2d 28 (1st Cir.1993).

This Court of Appeals has jurisdiction over the Appeal from the District Court's Final Order, affirming the Bankruptcy Court Order without directing further proceedings in the Bankruptcy Court. Therefore, this is clearly a Final order [sic] not a partial order. See *In re: Palm Coast, Matanza Shores Ltd. Partnership,* 101 F.3d 253 (2d Cir.1996), and See *In re: Hammond,* 27 F.3d 52 (3d Cir.1994), rehearing and suggestion for hearing in the banc [sic] denied.

This case involves a "FINAL" Order on appeal, because it finally resolved the question of law on a dispute on the merits and leaves nothing for the Court to do but exe-

cute its Order, See *In re: Boca Arena, Inc.,* 184 F.3d 1285, 1286 (11th Cir.1999).

The legal issue in dispute arose in a Bankruptcy Proceeding that concerns a Florida Real Estate issue concerning a Florida Land Trust, and whether or not there can be a merger of interest when the Trustee becomes the sole beneficiary under the Florida land Trust. This issue involves a single issue and/or claim and a single party.

Since this Appeal only involves a single issue and a single party, Bankruptcy Rule 7054(a) and Fed.R.Civ.P. 54(b) is not applicable to the present Appeal of this Final Order of the District Court. This does not involve multiple claims or multiple parties and would not under any circumstances create a piecemeal Appeal.

**10.** Salkin's jurisdictional statement reads, in full:

This is an appeal from a Final Order of the United States District Court which affirmed a partial summary judgment in the underlying bankruptcy adversary proceeding, brought by Salkin, the bankruptcy trustee, against Steven S. Saber, the Debtor; and Esther B. Slobodinsky, his mother. That partial summary judgment disposed of all issues pertaining to Slobodinsky in that litigation. On April 29, 1999, the remainder of the adversary proceeding was concluded with a judgment for denial of discharge against Saber. No appeal was taken of the discharge ruling. Therefore, the judgment on appeal to this Court is a final judgment, consistent with the usage of 28 U.S.C. § 1291.

tered a final judgment in this case. Upon reading the court's February 24, 1999 memorandum order denying the parties' motions for summary judgment, it is clear that the court did not accept Salkin's theory of the status of the Counsel Building, but neither did it accept Slobodinsky's theory. Rather, the court embraced a new theory—not proposed by either party—but then failed to take the steps necessary for its own theory to become a final judgment.

Salkin asked the bankruptcy court to avoid the transfer of the Counsel Building from Saber to Slobodinsky as fraudulent or preferential. Although Salkin asserted that a merger had occurred, the relief that she sought (avoidance of a transfer) necessarily rested upon the premise that Slobodinsky owned some interest in the Counsel Building. The court rejected this argument.

Slobodinsky contended that she held the Counsel Building as part of a land trust (because there had been no merger). Alternatively, she contended that she had paid legal consideration for the Counsel Building and that the sale was not preferential or fraudulent. Her theory thus rested upon the fact that there had been a transfer of at least some (if not all) interest in the Counsel Building from Saber to her. The court rejected this argument, too.

The court proffered its own theory of the status of the Counsel Building. The court, in denying the motions for summary judgment, ruled that there had been a merger of the legal and beneficial interests in Saber, and that Saber therefore owned the Counsel Building in fee simple absolute. This meant that when Saber purported to convey "all interest in the property held subject to said trust agreement" on July 8, 1993, he in fact conveyed nothing because there was no longer a trust agreement. Further, when Saber purport-ed to make Slobodinsky second successor trustee via a quit claim deed on January 9, 1998, he again conveyed nothing: "Th[e] Quit Claim Deed was simply a nullity because it attempted to make Slobodinsky the Second Successor Trustee of a nonexistent land trust and transfer a bifurcated property interest that no longer existed." The court thus concluded that the Counsel Building was still owned in fee simple absolute by Saber and was thus part of the bankruptcy estate, because Saber had not transferred anything to Slobodinsky. The court therefore rejected the theories of both Salkin and Slobodinsky that a transfer of some interest in the Counsel Building had occurred.

There was a major flaw in the court's memorandum decision, though, that prevented it from conclusively resolving the issue. The court failed to take the additional step necessary to complete its theory of the status of the Counsel Building. The July 8, 1993 conveyance from Saber to Slobodinsky was (presumably) recorded on the title to the property; the January 9, 1998 conveyance was recorded on January 20. This meant that a future purchaser of the Counsel Building had a cloud on the title; Salkin did not have marketable title. The bankruptcy court should have quieted the title to the Counsel Building to complete its theory—even though neither side had requested such relief. The court could have forced Slobodinsky to convey a quit claim deed to Salkin, conveying whatever interest she had in the property, so that Salkin could record this on the title. Or the court could have issued a declaratory judgment that Salkin could have recorded on the title, to show that Salkin had clear, marketable title.

Instead, the court and the parties proceeded *as if* the court had quieted the title, when *in fact* there was still a cloud on the title. Fortunately for Salkin, she was able

to secure a purchaser for the property despite the cloud on the title. The court approved the sale, and now the purchaser (Saada) stands in the shoes of Salkin against the claims of Slobodinsky. When Saada wants to sell the property, the next purchaser will (presumably) want a clear title. Saada will then have to institute a quiet title action, to achieve what the bankruptcy court should have already done, or will have to purchase a quit claim deed from Slobodinsky.

### B.

 In bankruptcy proceedings, "[t]his court lacks jurisdiction over a district court's disposition of an appeal from a nonfinal bankruptcy order." *In re Boca Arena, Inc.,* 184 F.3d 1285, 1286 (11th Cir.1999); *see also* 28 U.S.C. § 158(d).[11] "As with other types of cases, a final order in a bankruptcy proceeding is one that ends the litigation on the merits and leaves nothing for the court to do but execute its judgment." *In re Culton,* 111 F.3d 92, 93 (11th Cir.1997). In this case, clearly, something more is left to do—the title to the Counsel Building must be quieted. This means that the bankruptcy court's February 24 decision was not a final judgment (or even a partial final judgment), but merely an interlocutory order denying summary judgment. The fact that the court closed the adversary proceeding is of no moment; the court simply closed a pending case. Closure cannot transform an interlocutory order into a final judgment.

 A final judgment gives one party what they want—the plaintiff either re-

ceives the relief she sought or the defendant receives a judgment ending the controversy. Here, Salkin ultimately sought marketable title; she did not get it. Slobodinsky sought an adjudication that she was the lawful owner of the Counsel Building; she did not get it. Instead, the court's February 24 decision did nothing more than place the parties back where it found them. That Salkin later conveyed the property to Saada simply means that the adversary proceeding went for naught, and will have to be repeated (in substance) when Saada tries to quiet title.

 We realize that "any order within a bankruptcy case which concludes a particular adversary proceeding should be deemed final and reviewable." *In re Hillsborough Holdings, Corp.,* 116 F.3d 1391, 1393 (11th Cir.1997). We do not do disservice to this rule by today's holding. An adversary proceeding is not "concluded" for jurisdictional purposes simply because it is closed. Implicit in *Hillsborough*'s statement that an adversary proceeding has been "concluded" is that someone has prevailed. Thus, any order within a bankruptcy case that concludes a particular adversary proceeding—by granting relief or ending the controversy—should be deemed final and reviewable. In the instant case, relief was not granted and the controversy has not ended. There was no final judgment, and we therefore do not have jurisdiction to entertain this appeal.

### IV.

We do not have jurisdiction to hear this appeal. The appeal is therefore

DISMISSED.

---

11. In bankruptcy cases, adversary proceedings are generally viewed as equivalent to other types of lawsuits, such that final judgments issued in adversary proceedings are normally appealable in the same way as nonbankruptcy cases. *In re Boca Arena, Inc.,* 184 F.3d at 1286. This means that, in appropriate circumstances, a losing party must obtain Rule 54(b) certification before appealing. *Id.* at 1287; *see also* Fed. R. Bankr.P. 7054(a) (providing that "Rule 54(a)-(c) of Fed.R.Civ.P. applies in adversary proceedings").

RESTANI, Judge, dissenting:

However imperfect the relief provided by the bankruptcy court, it was final relief. The court determined that the bankruptcy estate had title to the property at issue and entered partial summary judgment accordingly. The remaining counts of the complaint relating to discharge were later resolved and no further action was required to complete the adversary proceeding.

Because the property at issue has been sold, stay having been denied, this action may be moot, but it is inappropriate to dismiss on mootness grounds based on the unclear record now before the court. Accordingly, I dissent from the order of dismissal.